J-A04037-14

2014 PA Super 189

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JOSHUA THOMAS WRIGHT | |
| Appellee | No. 825 WDA 2013 |

Appeal from the Order entered April 16, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0010466-2012

BEFORE:  BOWES, WECHT, AND STABILE, JJ.

OPINION BY STABILE, J.: **FILED AUGUST 29, 2014**

Appellant, the Commonwealth of Pennsylvania, appeals from the trial court's April 1 6, 2013 order suppressing evidence.  The Commonwealth asks us to decide whether the trial court erred in suppressing a cell phone that police seized pursuant to the plain view doctrine.  We affirm.

The trial court recited the pertinent facts and procedural history in its Pa.R.A.P. 1925(a) opinion:

> On July 2, 2012, [Appellee, Joshua Thomas Wright ("Appellee")], was charged with two counts of criminal homicide, one count of burglary, and one count of possession of a prohibited firearm stemming from the July 1, 2012 shooting deaths of Da'Shawna Gibson, [Appellee's] ex-girlfriend and mother of his child, and Michael Black, Gibson's supposed new paramour.  [Appellee] filed a motion to suppress on January 25, 2013, and a suppression hearing was held on April 5, 2013. On April 16, 2013, this [c]ourt granted [Appellee's] Motion to Suppress.  On May 1, 2013, the Commonwealth filed a Motion to

Reconsider, which was denied via Order of Court dated May 13, 2013. On May 15, 2013, the Commonwealth filed the instant appeal.

***

The following are the facts as found by this [c]ourt during the Suppression Hearing: The shooting deaths of Gibson and Black were brought to the attention of the Wilkinsburg Police Department by Brandy Clark ("Clark"), who was present in the home at the time of the incident. Clark relayed a few different versions of the events of the night in question, however ultimately she convinced the officers to enter and search the premises, where they discovered the bodies of Gibson and Black in an upstairs bedroom. Based upon Clark's observations and identification of [Appellee] as the shooter, an arrest warrant for [Appellee] was issued. The police executed the arrest warrant at approximately 2:20 a.m. at [Appellee's] mother's residence.

Upon arrest, [Appellee] was found in bed wearing only a pair of underwear. [Appellee] was then handcuffed, and, given his state of undress, the arresting police officers assisted him in getting clothed. They chose and placed upon him a pair of khaki shorts. The two officers testified that they had found [Appellee's] cellular telephone in the pocket of the shorts after they were placed upon him, and as such, the cellular telephone was seized incident to arrest. The [c]ourt did not find as credible testimony that the officers gave a double homicide suspect an article of clothing to wear with something as weighty as a cell phone in the pockets. This action would be contrary to the safety of the officers, as the clothing could have contained a gun or other small weapon, and contrary to police policy. [Appellee's] mother, who was present during the arrest testified that the cellular telephone was located 'in the front of the television on the left side' next to [Appellee's] bed. This [c]ourt found as credible [Appellee's] mother's testimony. Based upon the testimony presented at the suppression hearing, this [c]ourt concluded that

- 2 -

> the cellular telephone was situated on the nightstand next to the bed, and not seized incident to arrest or within [Appellee's] immediate control, and as such, the seizure was impermissible.

Trial Court Opinion, 8/26/13, at 1-3 (record citations omitted). Appellee stands accused of two counts of criminal homicide (18 Pa.C.S.A. § 2501(a)), one count of burglary (18 Pa.C.S.A. § 3502), and one count of persons not to possess a firearm (18 Pa.C.S.A. § 6501(a)(1)).

As set forth above, the Commonwealth filed a timely appeal from the trial court's suppression order.[1] The Commonwealth raises a single issue for

_____

[1] The Commonwealth relies on Rule 311(d) of the Pennsylvania Rules of Appellate Procedure, which provides as follows:

> **(d) Commonwealth appeals in criminal cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). The propriety of the Commonwealth's Rule 311(d) certification implicates our jurisdiction to entertain this appeal. **Commonwealth v. White**, 910 A.2d 648, 653 (Pa. 2006).

While the Commonwealth's good faith certification under Rule 311(d) is entitled to some deference, this Court need not accept its good faith certification in every case. In **White**, for example, an evenly divided Supreme Court could not agree whether an order denying a recusal motion substantially handicapped the Commonwealth's prosecution. The divided opinion left standing this Court's opinion that the denial of the recusal motion was not appealable pursuant to Rule 311(d). In **Commonwealth v. Cosneck**, 836 A.2d 871, 876 (Pa. 2003), the Supreme Court ruled that the Commonwealth could not rely on Rule 311(d) to appeal from a pretrial motion *in limine* admitting defense evidence. Nonetheless, where the
*(Footnote Continued Next Page)*

review: "Whether the lower court erred in granting the Appellee's motion to suppress his cellphone and its contents based on an allegedly unlawful seizure of the phone?" Commonwealth's Brief at 4.

We review the trial court's order according to the following standard:

> When the Commonwealth appeals from a suppression order, we . . . consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa. Super. 2013).

The Commonwealth accepts, as it must, the trial court's finding that Appellee's mother offered credible testimony as to the location of the cell phone. Therefore, the sole issue before us is whether the plain view

*(Footnote Continued)* —————————

defendant prevails in a pretrial motion to suppress Commonwealth evidence, our Supreme Court has held that "[w]hen a pretrial motion removes evidence from the Commonwealth's case, only the prosecutor can judge whether that evidence substantially handicaps his ability to prove every essential element of his case." ***Id.*** at 875 (*citing **Commonwealth v. Dugger***, 486 A.2d 382, 386 (Pa. 1985)). In the instant matter, therefore, we have jurisdiction to entertain this appeal pursuant to the Commonwealth's Rule 311(d) certification.

- 4 -

doctrine justified the warrantless seizure of Appellee's cell phone. We conclude that it did not.[2]

In general, the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution do not permit police to search for or seize property absent a lawfully obtained search warrant. *Commonwealth v. Anderson*, 40 A.3d 1245, 1249 (Pa. Super. 2012), *appeal denied*, 51 A.3d 837 (Pa. 2012). The plain view doctrine permits a warrantless seizure if each of the following conditions applies:

> 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

*Id.*

The parties do not now dispute that the police were lawfully present in Appellee's mother's home and that the cell phone was in plain view. The

---

[2] In his brief, Wright asserts the Commonwealth waived this issue. We disagree. At the suppression hearing, the Commonwealth's witnesses testified that the cell phone was on Wright's person and therefore seized incident to arrest. In response to the trial court's contrary finding of fact, the Commonwealth filed a motion for reconsideration asserting the police properly seized the cell phone pursuant to the plain view doctrine. The trial court addressed this issue on the merits in its Pa.R.A.P. 1925(a) opinion. Raising the issue in a motion for reconsideration was sufficient to preserve the issue for appellate review. *Commonwealth v. McCandless*, 880 A.2d 1262, 1268-69 (Pa. Super. 2005), *appeal dismissed*, 933 A.2d 650 (Pa. 2007); *Commonwealth v. Santiago*, 822 A.2d 716, 723 (Pa. Super. 2003), *appeal denied*, 843 A.2d 1237 (Pa. 2004).

trial court found that the Commonwealth failed to establish that the incriminating nature of Appellee's cell phone was immediately apparent. Trial Court Opinion, 8/26/13, at 4. A police officer has probable cause to believe that an object is incriminating where "the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or *useful as evidence of a crime*[.]" **Commonwealth v. McEnany**, 667 A.2d 1143, 1148 (Pa. Super. 1997) (emphasis in original). The probable cause standard does not require the officer's belief to be "correct or more likely true than false." **Id.**

In **Commonwealth v. Ellis**, 662 A.2d 1043, 1050 (Pa. 1995), a police officer seized a screwdriver from the defendant's vehicle. The officer testified that the screwdriver was capable of making the pry marks the officer observed at the scene of the crime. **Id.** In addition, an eyewitness saw the defendant's vehicle at the scene of the crime. **Id.** The Supreme Court concluded that the circumstances were sufficient to lead a person of reasonable caution to believe that the screwdriver was incriminating evidence. **Id.** Likewise, in **Commonwealth v. Jones**, 988 A.2d 649, 652 (Pa. 2010), the Supreme Court held police properly seized a cell phone because police knew the victim had a cell phone with him on the night of his murder and because police observed a blood-stained cell phone in plain view during their search of the defendant's dorm.

The Commonwealth relies on *McEnany*, in which police found a cell phone during their execution of a search warrant on the accused's van. *McEnany*, 667 A.2d at 1147. The accused argued that the warrant was not sufficiently specific to justify the seizure of his cell phone. *Id.* at 1148. The Commonwealth argued, and this Court agreed, that police lawfully seized the cell phone pursuant to the plain view doctrine. *Id.* Police were aware that the accused used the van to drive to the victim's residence on the day of the murder. *Id.* More importantly, police were aware that the accused made a phone call to the victim's residence on the day of the murder. *Id.* Based on these facts, the *McEnany* Court concluded that police were justified in seizing a cell phone in plain view during their execution of the search warrant. *Id.*

To summarize, in *Ellis*, *Jones*, and *McEnany*, police had specific evidence tying the seized object to the crime under investigation. We do not believe the analysis in any of these cases warrants reversal in the instant case. Here, unlike *McEnany*, police had no evidence of a specific phone call. This case is unlike *Jones* in that the physical condition of the cell phone did not link it to the crime under investigation, as did the blood-stained phone in *Jones*. We therefore disagree with the Dissent's argument that *Jones* and *McEnany* are indistinguishable from the instant matter. *See* Dissenting Opinion, at 10. The distinction between those cases and this one is that the police officers in *Jones* and *McEnany* relied on articulable

facts in support of their suspicion that the cell phone contained incriminating evidence, whereas here, the police relied on pure conjecture.

Detective Anthony Perry testified as follows:

> It's been my experience that cell phones often have crucial pieces of evidence for our case to assist our case [sic]. I took the phone with the intention of either myself or somebody in our office obtaining a search warrant to get the information or any potential evidence off the phone.

N.T., 4/5/13, at 11-12. Perry testified that he was aware that Appellee and the female victim had a prior romantic relationship, and he suspected that he would find communication between the two shortly prior to the murder. *Id.* at 12-13.

As is evident from the foregoing, Perry did not articulate any specific basis for his suspicion. Appellee and the victim had a romantic relationship at one point, but that relationship was over, and Perry did not explain why the past relationship supported his suspicion that Appellee and the victim had any contact on the day of the murder. Likewise, we believe the learned Dissent's argument relies on conjecture stemming from Appellant's prior relationship with the victim. **See** Dissenting Opinion at 8-9. In **McEnany**, on the other hand, police had specific information that the accused phoned the victim on the day in question. Similarly, in **Ellis**, the police officer offered facts to support his belief that the screwdriver was used in the crime under investigation. Perry offered only generalized speculation in support of his decision to seize Appellee's cell phone. A mere hunch does not justify a

seizure. ***See Commonwealth v. Holmes***, 14 A.3d 89, 96-97 n.16 (Pa. 2011) (a police officer must rely on articulable facts to justify a seizure); ***Commonwealth v. Parker***, 619 A.2d 735, 739 (Pa. Super. 1993) ("While the probable cause standard is flexible, mere suspicion is not a substitute for probable cause as grounds for a search and seizure."). Perry's assertion that cell phones often have crucial evidence would support seizure of a cell phone under virtually any circumstance.

Next, we disagree with the Dissent's assertion that the removal of the battery from the cell phone supports a different result in this case. In his affidavit of probable cause to search the cell phone, Detective Kenneth Ruckel stated criminal suspects commonly remove batteries from cell phones in order to avoid GPS detection. Affidavit of Probable Cause, 7/3/12, at 3.[3] According to the suppression hearing transcript, the battery was removed from Appellant's phone when Perry seized it. N.T., 4/5/13, at 80-83.

In these facts, we discern no basis for a seizure of the phone to search its digital contents. The scope of a search is limited by the basis for its authorization. ***See***, ***e.g.***, 619 A.2d at 740 (Pa. Super. 1993). The same holds true for searches for digital evidence. For example, this Court in

---

[3] Concededly, the Commonwealth's probable cause—or lack thereof—to search the cell phone's contents is not properly before us. The trial court suppressed the phone based on its conclusion that police unlawfully seized it, and therefore the trial court had no occasion to address the propriety of the subsequent warrant to search the phone's contents.

***Commonwealth v. Orie***, 88 A.3d 983 (Pa. Super. 2014) held several search warrants to be overbroad where they authorized searches of "any contents" of a flash drive and "all stored communications and other files" of an email account without narrowing the search to files relevant to the alleged criminal activity. ***Id.*** at 1002-10[4]

Instantly, the Commonwealth could establish Appellee's evasive conduct simply by introducing testimony that the phone was in pieces and that its physical condition evinced evasive conduct. We do not believe the digital contents of the cell phone are relevant to that point. Said another way, the physical condition of the phone in this case does not justify a conclusion that its contents could be incriminating. As we noted above, the instant facts are quite distinct from those of ***Jones***, where police found a blood-stained cell phone during their search of the defendant's dorm room for evidence of his involvement in a murder. The Dissent's reliance on the July 3, 2012 affidavit of probable cause – which is not at issue in this case – we believe misses the mark.[5]

_____

[4] The ***Orie*** Court noted that the law concerning search and seizure of digital information remains under development in Pennsylvania. ***Id.*** at 1009 n.43.

[5] Likewise, we believe the Dissent's reliance on the United States Supreme Court's recent opinion in ***Riley v. California***, 134 S. Ct. 2473 (2014) is misplaced. The Supreme Court noted, as the Dissent asserts, that cell phones contain "vast quantities of personal information." ***Id.*** at 2485. The Court did so, however, in support of an 8-1 majority opinion rejecting the government's rationale for a warrantless search of the phone's contents. *(Footnote Continued Next Page)*

Finally, the Commonwealth argues that police acted properly in seizing the cell phone in order to ensure that Appellee's mother would not have an opportunity to delete information. Here, the Commonwealth relies on *Commonwealth v. Bostick*, 958 A.2d 543 (Pa. Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009). *Bostick* is entirely inapposite, inasmuch as the question before the *Bostick* court was whether exigent circumstances justified warrantless entry into a home. *Id.* at 556-57. Exigent circumstances exist where a police officer has probable cause to believe that immediate action is necessary to preserve evidence of a crime. *Id.* at 557. As we have already explained above, police did not have probable cause to believe that Appellee's cell phone contained incriminating evidence. The Commonwealth's exigent circumstances argument lacks merit because the Commonwealth lacked probable cause to seize the cell phone. *See Commonwealth v. Joseph*, 34 A.3d 855, 861 (Pa. Super. 2011) (noting that the Commonwealth must demonstrate both probable cause and exigent circumstances to justify a warrantless seizure), *appeal denied*, 63 A.3d 775 (Pa. 2013).

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

The initial seizure of the phone was not at issue in *Riley*, and *Riley* therefore has no direct application here. Furthermore, the *Riley* majority relied on the vast quantity of personal information contained in a cell phone to support its opinion protecting an individual from unlawful government intrusion therein. Here, we believe the result urged by the Dissent would violate that protection.

We conclude that the trial court did not err in rejecting the arguments properly advanced by the Commonwealth.[6] We therefore affirm the trial court's order.

Order affirmed.

BOWES, J. files a Dissenting Opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/2014

_____

[6] To be clear, we have decided only that the plain view doctrine and exigent circumstances did not justify the warrantless seizure of Appellee's cell phone. We offer no opinion on whether police could have seized the cell phone on some other basis, or whether the police had any valid means of retrieving data from Appellee's cell phone.