J-S25032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HUSSEIN SALMAN CHOUMAN | |
| Appellee | No. 1408 WDA 2015 |

Appeal from the Order August 14, 2015
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001721-2014

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 12, 2016**

The Commonwealth appeals from an order granting Hussein Chouman's motion to suppress all evidence seized from his motor vehicle during a traffic stop following the issuance of a written traffic warning.  We affirm.

On November 4, 2015, Chouman was charged with trademark counterfeiting under 18 Pa.C.S. § 4119(a)(2) and (7) following discovery of counterfeit North Face jackets in his car during a traffic stop on Interstate 80.  On May 6, 2015, the trial court held a suppression hearing in which State Trooper Gary Knott was the lone witness.  The Commonwealth also submitted a videotape of the traffic stop into evidence.  In an order docketed on August 14, 2015, the trial court granted Chouman's motion to suppress.

The Commonwealth filed a timely notice of appeal, and both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises four issues in this appeal:

1. Whether the trooper lacked reasonable suspicion that criminal activity may have been afoot, such to initiate an investigative detention, based upon information elicited and observed by the trooper during the traffic stop?

2. Whether the defendant's consent to the search of his vehicle was tainted by its request having occurred during what the suppression court deemed to be an unlawful investigative detention?

3. Whether the stop was unlawful due to the length of the investigative detention?

4. Whether the defendant was under arrest without the requisite probable cause?

Brief For Commonwealth, at 4.

When the Commonwealth appeals from a suppression order,

we ... consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Wright***, 99 A.3d 565, 568 (Pa.Super.2014).

The trial court made the following findings of fact in its suppression order. On November 5, 2014, Trooper Gary Knott, an 18-year officer, was working in full uniform in a special criminal interdiction unit with three other

state police officers. Findings Of Fact ("FF"), ¶ 1. Trooper Knott has made thousands of traffic stops in his career and hundreds of arrests. FF, ¶ 2.

On the morning of November 5, 2014, Trooper Knott observed a Chevrolet Captiva traveling eastbound on Interstate 80, a two-lane highway in Mercer County, with a single occupant, later identified as Chouman. FF, ¶¶ 1, 3-4. While driving behind this vehicle, Trooper Knott observed it driving in the left-hand lane for .7 miles without overtaking other traffic traveling in its direction or traveling with the flow of traffic. FF, ¶ 5. The trooper pulled alongside the vehicle and discovered that it was an Enterprise rental car by typing in its license plate on his computer database. FF, ¶ 9. He decided to stop the vehicle for violating 75 Pa.C.S. § 3313(d) due to its failure to stay in the right-hand lane on a limited access roadway. FF, ¶ 5.

Prior to making this stop, Trooper Knott had information from various team meetings and information shared by police officers throughout the country that the current trend among smugglers was to use rental vehicles operated by a single person of no particular gender or race. FF, ¶ 8. Trooper Knott's interdiction unit used Vehicle Code violations as a mechanism for attempting to interdict smugglers of contraband, including guns, drugs and counterfeit merchandise. FF, ¶ 8.

When Trooper Knott activated his emergency lights, Chouman pulled over onto the right berm of the highway. FF, ¶ 7. The trooper admitted that

Chouman was never free to leave the scene from the time that he activated his emergency lights. FF, ¶ 38.

Trooper Knott approached the vehicle, leaned into the open passenger side window space and saw that the vehicle was full of items such as clothing, six Red Bull cans and other energy drinks. FF, ¶¶ 11, 15. Behind the passenger seat was a black duffle bag with black plastic garbage bags underneath. FF, ¶ 11. Trooper Knott testified that he believed criminal activity was afoot (but was unsure of what type of criminal activity) because (1) there was one individual in the car, (2) the black bags were similar to a recent counterfeiting stop he had made on the other side of Pennsylvania, (3) the trooper knew from his experience and training that counterfeit traffickers use energy drinks to drive longer distances, (4) Chouman appeared more nervous than most individuals that Trooper Knott has pulled over for traffic stops, and (5) Chouman stated he was returning to New Jersey after visiting his sister in Dearborn, Michigan, and the trooper knew from experience and training that counterfeit merchandise often is transported *west* on I-80 with proceeds therefrom traveling back *east*. FF, ¶¶ 12, 14-18.

Trooper Knott took Chouman's license back to his cruiser and entered Chouman's name into various databases. FF, ¶ 22. The trooper learned that Chouman had a prior federal offense from 1988 for counterfeiting clothing, but that there were no warrants for his arrest. FF, ¶ 28.

Trooper Knott went back to Chouman's vehicle, returned Chouman's license to him, gave him a written warning and asked him to sign it. FF, ¶¶ 28, 52. At this point, eleven minutes had gone by since Chouman's vehicle had stopped along the berm. Chouman complied with the directive to sign the warning, but he also asked about the nature of the alleged traffic violation. FF, ¶ 28. It appeared that he did not understand the law restricting travel in the left lane on a limited access roadway. *Id*. The trooper believed that Chouman continued to appear nervous. FF, ¶ 29. Without leaving Chouman's car, the trooper asked if he could search Chouman's vehicle. FF, ¶ 29. Chouman answered: "Yes." *Id*. The trooper conceded that Chouman was never free to leave after his license was returned to him. FF, ¶ 52.

Trooper Knott asked if Chouman had any criminal record, and Chouman answered that he had a problem operating too close to something as a street vendor but did not divulge his federal conviction. FF, ¶ 29. The trooper asked if Chouman had any large amounts of cash in the car, and he said: "No." FF, ¶ 31. The trooper again asked Chouman if he could search the car, and Chouman responded that he had no problem with him searching the car. FF, ¶ 32. The trooper did not ask Chouman if he could search any packages or containers in the car. FF, ¶ 33. Trooper Knott was the only trooper present at the time of Chouman's consent, but three other state

troopers arrived at different times during the ensuing search. FF, ¶¶ 29, 33, 37.

Trooper Knott retrieved the black duffle bag from behind the passenger seat, removed a container from within the bag, and found over $80,000.00 in cash inside the container. FF, ¶ 40. The trooper then found about 25 jackets behind the passenger's seat bearing a North Face trademark, most of which were marked at $165.00, and one of which was marked at $409.00. FF, ¶ 41.

At about 11:34 a.m., the troopers and Chouman drove their respective vehicles to the State Police barracks. FF, ¶ 48. At the barracks, Trooper Knott learned that the jackets were counterfeit and placed Chouman formally under arrest. FF, ¶ 42.

The suppression court held that Trooper Knott did not have reasonable suspicion to believe that Chouman was smuggling anything illegal. Trooper Knott's perception that smugglers tend to use rental vehicles and travel alone, the court wrote, were part of a generalized and long discredited drug courier and/or smuggler profile. Conclusions of Law ("CL"), at 3-4. The court rejected the trooper's claim that Chouman was nervous, rattled, evasive or defensive. CL, at 6-7. To the contrary, the video recording of the stop showed that Chouman appeared calm and casual but merely was confused about the nature of his alleged Vehicle Code violation. *Id*. He did not understand why he could not drive in the left lane when he was not

passing anyone. *Id*. As for the trooper's focus on the number of energy drinks, the court found that this "is just another non-individualized fact that is entitled to very little weight despite the trooper's claim that illegal traffickers typically drink these during hard travel." CL, at 7. Nor did the trooper have any reports of criminal activity involving this vehicle or occupant. CL, at 1. Finally, the court was unconvinced by the trooper's testimony that smugglers transport counterfeit goods westbound on I-80 and return eastbound with money. The court found this observation irrelevant because Chouman was traveling *eastbound* on I-80, and there was no money visible when the trooper first spoke with Chouman or issued the traffic warning. FF, ¶¶ 11-12, 14-18.

Based on our review of the evidence of record, including the videotape of the traffic stop, we conclude that the record supports the suppression court's findings of fact.

Our next task is to determine whether the suppression court properly applied the law to the facts. While the Commonwealth raises four issues in this appeal, we only find it necessary to address two legal issues – (1) whether Trooper Knott had probable cause to search Chouman's vehicle, and (2) whether Chouman voluntarily consented to the search of his vehicle.[1]

---

[1] Based on our disposition of these issues, we need not address the third and fourth issues raised in the Commonwealth's brief (whether the suppression
*(Footnote Continued Next Page)*

To begin with, the initial traffic stop was legal. Both the videotape and Trooper Knott's testimony demonstrate that Interstate 80 is a "limited access highway", i.e., "a highway in respect to which owners or occupants of abutting lands and other persons have no legal right of access except at points and in the manner determined by the authority having jurisdiction over the highway." 75 P.S. § 102 (defining "limited access highway"); **see also** Commonwealth Exhibit 1 (videotape); N.T., 5/6/15, at 61 (Trooper Knott's testimony that I-80 is limited access interstate). The Traffic Code provides that in a limited access highway having two lanes or more for traffic moving in the same direction,

> all vehicles shall be driven in the right-hand lanes when available for traffic except when any of the following conditions exist:
>
> (i) When overtaking and passing another vehicle proceeding in the same direction.
> (ii) When traveling at a speed greater than the traffic flow.
> (iii) When moving left to allow traffic to merge.
> (iv) When preparing for a left turn at an intersection, exit or into a private road or driveway when such left turn is legally permitted.

75 P.S. § 3313(d).

The suppression court credited Trooper Knott's testimony that he observed Chouman's vehicle driving in the left-hand lane for .7 miles without overtaking other traffic traveling in its direction or traveling with the flow of

_(Footnote Continued)_ ————————————

court properly held that the length of Chouman's detention was excessive and whether Chouman was under arrest without probable cause).

traffic. FF, ¶ 5; *see also* N.T., 5/6/15, at 63. Under these facts, Trooper Knott had probable cause to stop Chouman's car for violating section 3313(d).[2]

Although the initial traffic stop was legal, the ensuing search of Chouman's vehicle was not. The prerequisite for warrantless searches of a motor vehicle under Article I, section 8 of the Pennsylvania Constitution is probable cause; no exigency beyond the inherent mobility of a motor vehicle is necessary. **Commonwealth v. Gary**, 91 A.3d 102, 104 (Pa.2014). Article I, Section 8 affords no greater protection than the Fourth Amendment to the United States Constitution. **Id**. The suppression court correctly held that Trooper Knott had no probable cause to believe that Chouman was engaging in any illegal conduct besides his minor infraction of the Vehicle Code. Other than Chouman's stale conviction from 1988, almost three decades ago, Trooper Knott's suspicions rested on wholly innocent behavior (a lone driver on an interstate highway in a rental car in possession of multiple energy drinks, black bags and other lawful items) and his discredited accusation that Chouman was behaving nervously. This plainly was insufficient to justify a search of Chouman's car. **Commonwealth v. Germann**, 621 A.2d 589, 592 (Pa.Super.1993) ("evidence required to

---

[2] Moreover, Chouman expressly "do[es] not contest" the legality of the initial stop under section 3313(d). Brief For Appellant, at 8.

establish probable cause must be more than a mere suspicion or good faith on the part of the police officer").

We further agree with the suppression court that Chouman's consent to search his vehicle was involuntary.  The Commonwealth bears the burden of proving that the defendant consented to a warrantless search. *Commonwealth v. Acosta*, 815 A.2d 1078, 1083 (Pa.Super.2003) (*en banc*).  To establish a voluntary consensual search, the Commonwealth must prove "that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances."  *Commonwealth v. Strickler*, 757 A.2d 884, 901 (Pa.2000).

In *Strickler,* a police officer observed a car parked along a country road.  Two men were standing near the car and appeared to be urinating.  After questioning the men and verifying the documentation for the vehicle and the driver, the officer returned the documents to the driver.  At that time, the officer informed Strickler that it was not appropriate to stop along the road and urinate on someone's property.  The officer began walking back to his cruiser when he turned and asked Strickler if there was anything illegal in the vehicle.  When Strickler stated that there was not, the officer requested Strickler's consent to search the vehicle. The officer told Strickler that he was free to withhold his consent. Strickler consented to the search, which disclosed a marijuana smoking pipe.

The trial court suppressed the marijuana pipe on the ground that Strickler's consent was not voluntary. Our Supreme Court held, however, that Strickler's consent was voluntary, even though the officer had never expressly told Strickler that he was free to leave following the initial lawful detention. *Strickler*, 757 A.2d at 900. The Court adopted a totality-of-the-circumstances approach delineating a nonexclusive list of factors to consider in making this assessment, including: (1) the presence or absence of police excesses; (2) whether physical contact occurred; (3) whether police directed the individual's movements; (4) police demeanor and manner of expression; (5) the location and time of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) whether and to what degree the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, thus suggesting to the individual that his movements may remain subject to police restraint; and (9) whether the police expressly told the individual that he was free to leave -- this latter factor being an objective and potent one. *Id*. at 898-901. With regard to the last two factors, *Strickler* observed:

> The degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless … thus suggesting to a citizen that his movements may remain subject to police restraint, is a pertinent factor … '[F]ew motorists would feel free ... to leave the scene of a traffic stop without being told they might do so.' While recognizing … that the admonition to a motorist that he is free to leave is not a constitutional imperative, the presence or absence

- 11 -

of such a clear, identified endpoint to the lawful seizure remains a significant, salient factor in the totality assessment.

*Id*. at 898-99.

*Strickler* focused upon the fact that the officer's actions suggested to Strickler and his companion that they were free to leave following the initial detention, and the officer did nothing to suggest that the subsequent request for the defendant's consent to search the vehicle was to be viewed as a directive. *Id.* The Court opined: "[T]he officer did not touch Strickler or direct his movements; there is no evidence of any use of coercive language or tone by the officer. We also deem significant the arresting officer's admonition to Strickler that he was not required to consent to the search." *Id*. at 900. Thus, the officer's admonition that Strickler could refuse consent outweighed the officer's failure to expressly advise the defendant that he was free to leave following the initial detention. *Id*. at 901-02.

The present case is distinguishable from *Strickler*. Although Trooper Knott handed Chouman's license back to him, the trooper simultaneously requested Chouman's consent to search the vehicle *without* telling Chouman that he was free to leave. Thus, a factor critical to the disposition in *Strickler* – an admonition that the driver could refuse consent – was not present here. We also find persuasive the suppression court's reasoning on this issue:

Trooper Knott candidly conceded that once he decided he was going to pull this vehicle over because it was a rental unit with a sole occupant, the person would not be free to leave until he completed his criminal interdiction investigation. Since that investigation was never in the view of the suppression court supported by reasonable suspicion to support that criminal activity was afoot, it was deemed to be illegal. Furthermore, while Trooper Knott issued a traffic warning in writing to [Chouman] while [he] was seated in the driver seat, there was no break between the alleged traffic stop investigation and the request to search the vehicle. Trooper Knott was leaning into [Chouman]'s vehicle when he returned his paperwork and gave him a written warning [but] did not tell [Chouman] that he was free to leave. Instead, [the trooper] just continued on without even leaving the interior of the police car[3] with his criminal interdiction investigation. His failure to have any break between the two investigations is evidence that Trooper Knott meant what he said when he testified that once the trooper determined [Chouman] was alone in a rental car, that [Chouman] would not be free to leave until he concluded his criminal interdiction investigation.

Pa.R.A.P. 1925(a) Opinion, at 4-5.[4]

_____

[3] It appears from the evidence, particularly the videotape, that the suppression court intended to state that Trooper Knott continued his investigation without even leaving the interior of Chouman's car.

[4] Similarly, there is persuasive authority from other jurisdictions that the defendant's consent is involuntary when the officer returns the defendant's paperwork but continues to ask questions or request that the defendant answer additional questions. *See*, *e.g.*, *State v. Moore*, 283 Kan. 344, 154 P.3d 1, 8-9 (2007) (since videotape shows that officer, "a large, physically imposing individual," "sometime after returning the license and registration and after telling Moore that is 'all I have for you,' remained with his face at the passenger-side window, apparently alternating between leaning on and nearly touching the frame," during which time he asked defendant "if he would answer some questions," "a reasonable person would not feel free to leave").

For these reasons, the suppression court properly granted Chouman's motion to suppress all evidence seized during the search of his vehicle.

Order affirmed.

President Judge Emeritus Ford Elliott joins in the memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2016

- 14 -