J. S33041/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
       v.    :
   :
JAMES EDWARD SMITH,    :       No. 1172 MDA 2018
   :
       Appellant    :


Appeal from the Judgment of Sentence Entered April 26, 2018,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0002908-2016


BEFORE: LAZARUS, J., OTT, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 23, 2019**

James Smith appeals from the April 26, 2018 aggregate judgment of

sentence of 7 to 14 years' imprisonment imposed after a jury found him guilty

of possession of firearm with altered manufacturer's number, unlawful

possession of a firearm, and firearms not to be carried without a license.[1]

After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> On the evening of December 22, 2015, Officers
> [Alan] Shipley and [Michael] Rudy were conducting
> routine patrol with the street crimes unit of the
> Harrisburg Police Department at the 600 block of
> Geary Street. Officers Rudy and Shipley were
> standing on the front porch of [a]ppellant's home,
> 612 Geary Street, when he arrive[d] home driving a
> Buick Enclave. Officers later learn[ed] that
> [a]ppellant was the driver of the vehicle, and was

---

[1] 18 Pa.C.S.A. §§ 6110.2(a), 6105(a)(1), and 6106(a)(1), respectively.

accompanied by Mr. Jukennith Smith, his nephew, in the passenger's side.

Officer Shipley initiated a conversation with [appellant]. During the duration of that conversation Officer Shipley believed that criminal activity was afoot. Officer Rudy asked [a]ppellant if he would consent to a search of the vehicle he was driving. [Appellant] refused to consent to a search of the vehicle stating that it was not his vehicle and Officer Rudy would have to ask his wife, Ms. Clark, for permission. Officer Rudy then asked Ms. Clark if she would consent to having the vehicle searched, and she also declined. Without entering the vehicle, Officer Rudy walked around its perimeter looking through the windows. From walking around the vehicle, Officer Rudy could clearly see a firearm sticking out by approximately two thirds from underneath the driver's seat floorboard. This gun was later identified and stipulated to at trial as being a[] Kel-Tec 9mm semiautomatic handgun. After Officer Rudy saw the gun, he entered the car to retrieve it and placed [appellant] under arrest.

Recorded conversations were played for the jury at trial and authenticated by Officer Rudy. It was stipulated by both parties that in each recording [a]ppellant was a participant. The Commonwealth's purpose in playing these recordings[] was to prove that [a]ppellant was attempting to find someone else to admit to possession of the firearm. [] Appellant also testified at his trial. Throughout the duration of his testimony he attempted to prove that other individuals had access to the vehicle he was driving on the day of the incident. [] Appellant outlined his day, with his testimony indicating that his employees along with his nephew had access to his vehicle.

Trial court opinion, 10/22/18 at 2-3 (citations to notes of testimony omitted).

Appellant was subsequently arrested and charged with possession of firearm with altered manufacturer's number, unlawful possession of a firearm,

and firearms not to be carried without a license. On April 21, 2017, appellant filed an **omnibus** pretrial motion to suppress the evidence seized as a result of the warrantless search of his vehicle.[2] Following a hearing, the trial court denied the motion on January 8, 2018. Appellant proceeded to a jury trial and was subsequently found guilty of the aforementioned offenses on March 15, 2018. As noted, appellant was sentenced to an aggregate term of 7 to 14 years' imprisonment on April 26, 2018. Thereafter, appellant filed timely post-sentence motions "to set aside conviction" arguing that there was insufficient evidence that he possessed the firearm and the verdict was against the weight of the evidence. (**See** post-sentence motions, 5/3/18 at ¶¶ 3-5, 7-9.) The trial court denied appellant's post-sentence motions on June 6, 2018.[3] This timely appeal followed.[4]

---

[2] As noted, this vehicle was owned by appellant's wife, Angela Clark (**See** notes of testimony, 3/14-15/18 at 27, 68.) However, for the ease of our discussion, we will refer to this vehicle as "appellant's vehicle" or "his vehicle."

[3] We note that the trial court opinion incorrectly indicates that it issued an order on May 10, 2018 denying appellant's post-sentence motions. (**See** trial court opinion, 10/22/18 at 1.) However, our review of the docket reveals that the trial court's May 10, 2018 order merely directs the Commonwealth to respond to appellant's post-sentence motion within 20 days and states that the failure to do so "shall result in a hearing being scheduled in this matter." (Trial court order, 5/10/18.)

[4] On July 12, 2018, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), within 21 days. Following an extension, appellant filed his Rule 1925(b) statement on August 27, 2018, and the trial court filed its Rule 1925(a) opinion on October 22, 2018.

Appellant raises the following issues for our review:

1. Did the [suppression] court err by failing to suppress the evidence recovered during a warrantless vehicle search?

2. Did the Commonwealth fail to present sufficient evidence to prove the element of possession in the following offenses: possession of a firearm with altered or obliterated serial number, person prohibited from possessing a firearm, and possession of firearm without a license?

Appellant's brief at 9 (extraneous capitalization omitted).

Appellant first argues that the suppression court erred in denying his motion to suppress the firearm recovered by Officer Rudy during the warrantless search of his vehicle. (*Id.* at 16.)

[Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals

freedom from unreasonable searches and seizures." ***Commonwealth v. Bostick***, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), ***appeal denied***, 987 A.2d 158 (Pa. 2009). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." ***Commonwealth v. McCree***, 924 A.2d 621, 627 (Pa. 2007). One such exception is the plain view doctrine. ***See id.*** (holding, "[t]he 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable"), quoting ***Horton v. California***, 496 U.S. 128, 133 (1990).

> Our Supreme Court has expressly recognized that incriminating objects plainly viewable [in the] interior of a vehicle are in plain view and, therefore, subject to seizure without a warrant. This doctrine rests on the principle that an individual cannot have a reasonable expectation of privacy in an object that is in plain view.

***Commonwealth v. Turner***, 982 A.2d. 90, 92 (Pa.Super. 2009) (internal citations omitted), ***appeal denied***, 992 A.2d 889 (Pa. 2010).

In ***Commonwealth v. Luczki***, 212 A.3d 530 (Pa.Super. 2019), this court recently reiterated that the plain view doctrine permits the warrantless seizure of objects in plain view when the following three prongs are satisfied: "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the

officer has a lawful right of access to the object." *Id.* at 547 (citation and parentheses omitted); *see also McCree*, 924 A.2d at 625.[5]

Upon review, we agree with the suppression court's conclusions that the recovery of the firearm falls within the plain view exception to the search warrant requirement. First, the record supports the conclusion that Officer Rudy observed the firearm in appellant's vehicle from a **lawful vantage point**. Officer Rudy, a ten-year veteran of the Harrisburg City Police Department, testified that on the day in question he was partnered with Officer Shipley of the Pennsylvania Board of Probation and Parole and was on routine patrol as part of his duties with the Street Crimes Unit. (Notes of testimony, suppression hearing, 1/8/18 at 5-6.) Officer Rudy testified that he observed a vehicle being driven by appellant pull up in front of his house and park on the public street. (*Id.* at 6-7.) Officer Rudy indicated that as he

---

[5] We recognize that "the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution provide limited protection to those on parole." *Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa.Super. 2018) (citation omitted), *appeal denied*, 194 A.3d 1040 (Pa. 2018).

> [P]ursuant to 61 Pa.C.S.A. § 6153, a state parole agent may conduct a personal or property search of a parolee if there is reasonable suspicion to believe that the parolee "possesses contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S.A. § 6153(d)(1)(i) and (d)(2).

*Gould*, 187 A.3d at 935. However, because appellant's claims are limited to the warrantless vehicle search conducted by Officer Rudy, we find that Section 6153 is not implicated.

walked around the perimeter of appellant's vehicle, he observed through the window two-thirds of a firearm laying in plain view on the driver's seat floorboard. (*Id.* at 9-10.)

Second, the **incriminating character** of the firearm would have been immediately apparent to Officer Rudy. Officer Rudy testified that he has been involved in firearms investigations "between 50 and 75" times and that in his experience, he "could clearly see [the object he observed] was a firearm[.]" (*Id.* at 5, 11.) Although it is undisputed that individuals can legally own firearms under certain circumstances, the fact that Officer Rudy was aware that appellant had a prior felony conviction enumerated in 18 Pa.C.S.A. § 6105(b) that prohibited him from possessing a firearm provided him with probable cause to believe that it may have been involved in criminal activity.[6]

---

[6] At the suppression hearing, Officer Rudy testified as follows:

> Q. Okay. Is it *per se* illegal to have a weapon in a vehicle in Pennsylvania?
>
> A. I knew prior that [appellant] had a previous PWI conviction. The one thing I do when I'm with an agent and we go to houses, if -- some houses they want us to go in with, sometimes they don't. If I'm not familiar with the person, I'll say, you know, what is this guy on parole for, something like that. And Agent Shipley alerted me that he has a previous history of PWI.
>
> Q. Okay. So you knew that before you started looking for the gun.
>
> A. That he had a previous history of PWI?

"A police officer has probable cause to believe that an object is incriminating where the facts available to the officer would warrant a man of reasonable caution in the belief[] that certain items may be contraband or stolen property or useful as evidence of a crime[.]" ***Commonwealth v. Wright***, 99 A.3d 565, 569 (Pa.Super. 2014) (citation, emphasis, and internal quotation marks omitted; brackets in original), ***appeal denied***, 116 A.3d 605 (Pa. 2015).

Third, Officer Rudy had **lawful right of access** to the firearm in the vehicle. As noted, Officer Rudy testified he could plainly observe two-thirds of the firearm through the vehicle's window, without having to enter the vehicle or stand on its wheel well. (Notes of testimony, suppression hearing, 1/8/18 at 9-11, 16-17.) At that point, Officer Rudy believed the weapon was contraband. (***Id.*** at 18.) Appellant makes much of the fact that "[Officer Rudy] could not have seen inside the car clearly because it was 7:45 p.m. on December 22nd. It was dark, and the officer could not say for certain that he used a flashlight to see into the vehicle that had tinted windows." (Appellant's brief at 19.) However, Officer Rudy testified that the area was well lit from a large spotlight in an adjacent parking lot and that he "assum[ed]" he utilized a flashlight that evening, it "being nighttime." (Notes

---

Q. Right.

A. Before we went to the house I knew that.

Notes of testimony, 1/8/18 at 18-19.

- 8 -

of testimony, suppression hearing, 1/8/18 at 10.) On cross-examination, Officer Rudy further noted as follows:

> Q. Officer Rudy, do you recall on the night in question if that vehicle you were looking at had reflective tint on it?
>
> A. It's a Buick Enclave. I know, standard factory, they do have tint, especially on the back windows. I'm confident it had a little bit of tint --

(The court reporter interrupted.)

> [Officer Rudy]: I know Buick Enclaves -- the specific tint or sunscreen this vehicle had it on, I don't know how dark it was. **I know that the front windows were -- you were able to see inside of them.**
>
> Q. Okay. So when you shined your flashlight in that window, it doesn't reflect back at you. You actually illuminated the inside of the vehicle?
>
> A. **You could see clear as day inside of that -- the front seat of that vehicle.**

*Id.* at 17 (emphasis added).

This court has long recognized that "[t]he fact that [the officer] required illumination from a flashlight to see into the darkened interior of the vehicle did not prevent the gun from being in plain view or render the policeman's conduct unreasonable." *Commonwealth v. Merkt*, 600 A.2d 1297, 1299-1300 (Pa.Super. 1992). Likewise, questions of witness credibility and the weight to be afforded the evidence are within the sole province of the fact-finder, who "is free to believe all, part, or none of the evidence."

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa.Super. 2011) (citations omitted), *appeal dismissed as improvidently granted*, 54 A.3d 22 (Pa. 2012). Here, there is nothing in the record to conclude that Officer Rudy's testimony was anything but credible. Based on all of the foregoing, we discern no error on the part of the suppression court in denying appellant's suppression motion.

We now turn to appellant's claim that there was insufficient evidence to sustain his firearms convictions[7] because the Commonwealth failed to prove

---

[7] Appellant was found guilty of possession of firearm with altered manufacturer's number, unlawful possession of a firearm, and firearms not to be carried without a license. The crime of possession of firearm with altered manufacturer's number provides that, "[n]o person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated." 18 Pa.C.S.A. § 6110.2(a).

The crime of unlawful possession of a firearm is defined as follows:

**(a) Offense defined.--**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

Lastly, a person will be found guilty of firearms not to be carried without a license if they "carr[y] a firearm in any vehicle or . . . concealed on or about his person, except in his place of abode or fixed place of business, without a

that "he possessed the firearm" or "exercised control over the [firearm]" found in his vehicle. (Appellant's brief at 20, 22.) In support of this contention, appellant avers that numerous other individuals had access to the vehicle on the day of the incident, including his nephew, Jukennith Smith. (*Id.* at 22.)

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

In situations where it cannot be proven that a suspect had the firearm on his person, as is the case here, the Commonwealth is required to prove constructive possession. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the

---

valid and lawfully issued license[.]" 18 Pa.C.S.A. § 6106(a)(1). The record reflects that the parties stipulated during trial that appellant had a prior felony conviction enumerated in Section 6105(b) that prohibited him from possessing a firearm, and that the firearm that was found the day of the incident had a "partially obliterated" serial number. (*See* notes of testimony, 3/14-15/18 at 34-35, 104-105.) These elements are not at issue on appeal.

> contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control.

**Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa.Super. 2012) (citations and internal quotation marks omitted), **appeal denied**, 63 A.3d 1243 (Pa. 2013). As with any other element of a crime, the Commonwealth may sustain its burden of proving constructive possession by means of wholly circumstantial evidence, and the requisite intent may be inferred from examination of the totality of the circumstances. **Hopkins**, 67 A.3d at 820.

Upon review of the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence to establish that appellant constructively possessed the firearm found in his vehicle. The record establishes that while on routine patrol on the 600 block of Geary Street, Officer Rudy observed appellant park outside his home and exit his vehicle. (Notes of testimony, 3/14-15/18 at 24-25.) Officer Rudy testified that while walking around the perimeter of the vehicle, he observed two-thirds of a firearm in plain view sticking out from under the driver's side seat where appellant had just exited. (**Id.** at 28-31.)

Appellant's contention that he was not in constructive possession of the firearm found in plain view on the driver's side of a vehicle that he was observed driving moments before, because other individuals also had access to said vehicle earlier in the day, disregards the fact that "[he] also had an

- 12 -

equal opportunity if not more opportunity to access the vehicle and the gun."
(Trial court opinion, 10/22/18 at 6-7.)  *See*, *e.g.*, *Hopkins*, 67 A.3d at
820-821 (holding that, *inter alia*, the evidence was sufficient to show that
the defendant constructively possessed a firearm found in a vehicle he was
driving, where the firearm was found within arm's length of both where
defendant was seated and another passenger).  Based on the foregoing, we
find that the Commonwealth presented sufficient evidence for the jury to
conclude, based upon the totality of the circumstances, that appellant
possessed "the power to control the [firearm] and the intent to exercise that
control."  *See Brown*, 48 A.3d at 430.  Accordingly, appellant's sufficiency
claim must fail.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/23/2019