J-A25008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VINCENT A. CIRILLO, JR., | |
| Appellant | No. 1868 EDA 2017 |

Appeal from the Judgment of Sentence April 8, 2017
in the Court of Common Pleas of Montgomery County,
Criminal Division at No(s): CP-46-CR-0006500-2015.

BEFORE:  PANELLA, J., KUNSELMAN, J. and NICHOLS, J.

MEMORANDUM BY:  KUNSELMAN, J.:          **FILED MARCH 13, 2019**

Vincent A. Cirillo, Jr., appeals from the judgment of sentence imposed after a jury convicted him of rape of an unconscious person, involuntary deviate sexual intercourse (IDSI) of an unconscious person, sexual assault, and unsworn falsification.[1]  We affirm.

The trial court summarized the pertinent facts as follows:

> On August 3, 2015, A.U. arranged a meeting with [Cirillo], her attorney, to discuss an upcoming court date in her ongoing custody cases.   A.U. met [Cirillo] through her father Raymond who was friendly with him through the local social scene.  The meeting was initially scheduled to take place at a restaurant; however, A.U. was running late and arranged, via text, to move the meeting to her home in West Norriton, Montgomery County.   When A.U. and her boyfriend arrived at the home, [Cirillo] was waiting for them

---

[1] 18 Pa.C.S.A. §§ 3121(a)(3), 3123(a)(3), 3124.1, and 4904(a)(1).

in the parking lot. A.U. introduced her boyfriend, Paul Buckwalter, to [Cirillo]; Mr. Buckwalter then returned to his own home to care for his children. [Cirillo] and A.U. went inside her home to discuss the matters in which he was representing her.

Approximately fifteen minutes later, A.U.'s father, Raymond, and his girlfriend, Stacey Julian, arrived at the home to visit with [Cirillo]. A.U., her father, his girlfriend, and [Cirillo] sat in A.U.'s kitchen socializing. A.U. and her father's girlfriend went to a local beer distributor to buy more beer; they were gone for approximately 10-15 minutes. When they returned to the home with 8 oz. bottles of beer, the foursome continued drinking; A.U. had one beer at the table. A.U. went upstairs to take a shower, her father's girlfriend accompanied her while her father and [Cirillo] remained in the kitchen. At some point after the women returned downstairs, A.U.'s father and his girlfriend left to ride Raymond's motorcycle. [Cirillo] and A.U. resumed their discussion of her pending custody matters.

During the discussion, A.U. retrieved a bottle of vodka from the freezer. Her neighbor knocked on the door and asked for a drink. [A.U.] poured herself and her neighbor a glass of the vodka and went outside to socialize with the neighbors. During the time she was outside, approximately thirty to sixty minutes, her neighbors noticed a drastic change in her demeanor.

When Raymond and his girlfriend arrived back at the home, A.U. was highly intoxicated and slurring her words. After failed attempts to get his daughter to go inside and an argument with Ms. Julian, Raymond began to leave. Ms. Julian intended to stay at A.U.'s home. A.U. followed her father to the parking lot and fell into the bushes.

Her neighbor helped her up and walked her to her apartment where [Cirillo] and Ms. Julian met him at the door. Ms. Julian testified that she and [Cirillo] helped A.U. up to her room. At this point, [Cirillo] gave Ms. Julian $40 to secure drugs. Ms. Julian used A.U.'s phone and made several calls to her dealers between 10:02 p.m. and 10:14 p.m. When no one was able to come pick her up, she walked to the area of Chain and Lafayette Streets in Norristown, secured drugs and went home.

- 2 -

With Ms. Julian gone, [Cirillo] and A.U. were now alone in her bedroom. [Cirillo], by his own admission, then performed oral sex on A.U., after which he claims she fell asleep. At this point, he took out his phone to photograph her. During a period of approximately twenty-five minutes, beginning at 10:25 p.m. and ending at 10:50, [Cirillo] took six photos of A.U., in which she is clearly unconscious. In the final picture, [Cirillo's] semen is visible on A.U.'s inner thigh and around her vagina. [Cirillo] covered A.U. with a blanket and left the home.

Meanwhile, when he returned to his home, Raymond contacted A.U.'s boyfriend to express concern over her condition. Mr. Buckwalter returned to A.U.'s home to check on her around 11:35-11:40 p.m. and found A.U. unconscious in her bedroom, half naked. He attempted to wake her, but was unable to do so. At this point he called [Cirillo] and asked him what happened. [Cirillo] assured him that nothing happened between the two of them. Mr. Buckwalter eventually carried A.U. into the shower in an attempt to wake her. During this time, he took four photos to document the state in which he found her. He dressed her and took her to the hospital. At the hospital, she was unable to consent to testing and was not examined for signs of sexual assault at this point. They returned to Mr. Buckwalter's home.

Upon waking the next day, A.U. had no memory of the previous evening. She spoke to her boyfriend and father in an attempt to determine what happened the previous night. On August 5, 2015, she called [Cirillo] and explained she couldn't remember what happened and he told her "No memory is a good memory." He also told her that they had sex, and that she seemed pretty drunk, and that he did not check to see if she was breathing before he left. The next day, she went to police. On August 7, 2017, A.U. went to the hospital and was examined by Sexual Assault Nurse Examiner Carrie Bell.

Trial Court Opinion, 11/8/17, at 1-4 (citations omitted).

The trial court then summarized the police investigation that followed:

- 3 -

With A.U.'s permission, police arranged to intercept a conversation between A.U. and [Cirillo] at her home on August 8, 2015. During the recorded conversation, [Cirillo] told her repeatedly that they had sex and showed her the picture he had taken during the assault as proof that he took precautions to ensure that she would not become pregnant. A.U. had no knowledge that this picture had been taken. [Cirillo] told her he would delete the photo.

Upon hearing of the photograph and [Cirillo's] indication that he would destroy the photo, law enforcement decided to intercept him when he left the apartment and confiscate his phone. Lieutenant Christopher Kuklentz of the Montgomery County Detective Bureau was part of the team that intercepted [Cirillo]. [Cirillo] agreed to follow law enforcement officers to West Norriton Police Department where he gave a written question and answer statement. Prior to leaving the parking lot, Lt. Kuklentz asked [Cirillo] if "based on your experience as an attorney, do you think you'd be in legal trouble for what you did to the victim? [Cirillo] replied "yes because of her condition at the time."

In his written statement, he admitted to performing oral sex on A.U., ejaculating on her leg and that she was "semi-conscious" while he performed oral sex on her. However, he denied penetration. When informed that his conversation with A.U. had been recorded, [Cirillo] told law enforcement that he lied to her about penetration because he wanted to protect his reputation as a man with his many girlfriends.

Trial Court Opinion, 11/8/17, at 5-6 (citations omitted).

On October 4, 2016, Cirillo entered an open guilty plea to one count of rape of an unconscious person. At the time of his scheduled sentencing on December 16, 2016, Cirillo made an oral motion to withdraw his guilty plea, which the trial court granted that same day. A jury trial commenced on February 6, 2017, and convicted Cirillo of the aforementioned charges. On April 26, 2017, Cirillo filed a "Motion for Extraordinary Relief," which the trial

court denied at the time of sentencing. The trial court then imposed an aggregate term of ten to thirty years in prison. Following the denial of post-sentence motions, Cirillo filed this timely appeal. Both Cirillo and the trial court have complied with Pa.R.A.P. 1925.

Preliminarily, we note that, within his brief, Cirillo has raised sixteen issues, several of which have multiple subparts. Justice Robert H. Jackson warned of the dangers of this shotgun approach many years ago:

> Legal contentions, like the currency, depreciate through overissue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at a lack of confidence in any one. Of course, I have not forgotten the reluctance with which a lawyer abandons even the weakest point lest it prove alluring to the same kind of judge. But experience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.

Ruggero, J. Aldisert, J., "Winning on Appeal: Better Briefs and Oral Argument," at 130 (2d ed. 2003) (quoting Robert H. Jackson. "Advocacy Before the United States Supreme Court," 37 Cornell L.Q. 1, 5 (1951)). Our Supreme Court has concluded that this "much quoted" advice, unfortunately, "often 'rings hollow[.]'" ***Commonwealth v. Robinson***, 864 A.2d 460, 480 n.28 (Pa. 2004) (citing Ruggero J. Aldisert, J., "The Appellate Bar: Professional Competence and Professional Responsibility—A view from the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982)). But its importance cannot be overstated. ***See***, ***e.g.***, ***Jones v. Barnes***, 463

- 5 -

U.S. 745, 751-52 (1983) (noting that "[e]xperienced advocates since time beyond memory emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); **Howard v. Gramley**, 225 F.3d 784, 791 (7th Cir. 2000) (opining that "one of the most important parts of appellate advocacy is the selection of the proper claims to urge on appeal. Throwing in every conceivable point is distracting to appellate judges, consumes space that should be devoted to developing arguments with some promise, inevitably clutters the brief with issues that have no chance . . . and is overall bad appellate advocacy"); Aldisert, **supra**, at 129 (stating "[w]hen I read an appellant's brief that contains more than six points, a presumption arises that there is no merit to *any* of them.")

As shall be detailed below, this commentary is especially applicable here, as several of Cirillo's issues overlap, while others are waived because they are either undeveloped or were not preserved below.

> **I. DID THE [TRIAL] COURT ERR IN PERMITTING THE SEXUAL ASSAULT NURSE ("SANE") TO USE THE TERM "VICTIM" RATHER THAN "PATIENT" DURING THE COURSE OF HER TESTMONY?**

Cirillo's first issue concerns the testimony of the Sexual Assault Nurse Examiner ("SANE"), Carrie Bell. When she began her testimony, Nurse Bell used the phrase "a victim" when describing how she conducts a SANE examination generally. Cirillo objected, and the trial court gave the following instruction:

THE COURT: All right. Ladies and gentleman, you know, again, the objection is in the nature of, in her profession and in her world, she uses the word victim. And it means nothing. It just - - it's a reference that she utilizes in her profession when she undertakes an examination.

In the context of a trial, if she's using it, it's not supposed to have any conclusory determination because you're here to determine whether crimes were committed and then, under legal terms, whether victim has any relation to that.

So please, that word just, you know, again, in the context of a criminal case is just a descriptive word. It is not a conclusion of anything. And again, only juries make decisions such as that. With that said, I didn't want to go and have to interrupt each time because it's clear that they use those words in their documents.

All right. With that cautionary instruction, you may continue.

N.T., 2/10/17, at 17.

When Nurse Bell began to describe the specific examinations she performed in this case, she again referred to "the victim." *Id.* at 28. Cirillo again objected, and the trial court gave the following cautionary instruction:

And again, ladies and gentleman of the jury, you know, the use of the word victim again is a term of art that they use in their profession and has no bearing - - she is not here to determine that for today. So I'll make that clear.

So if you're able to not - - but I'm going to instruct the jury every once in a while just because it is a determination that ultimately is made based upon a jury's ultimate verdict.

*Id.* at 34.

Citing SANE "mandated protocol," Cirillo claims that Nurse Bell's reference to U.A. as "the victim" rather than "the patient" violated the tenets of her profession and render her an advocate for the Commonwealth rather

- 7 -

than a neutral fact witness. Although Cirillo concedes that the trial court twice gave cautionary instructions to the jury with regard to Nurse Bell's use of the term, he claims the first instruction was insufficient, while the second instruction that her use of the word "victim" was a "term of art" "was blatantly false, [was] not supported by the record is contrary to SANE nurse training, and must have come from a non-SANE source that works with sexually abused women." Cirillo's Brief at 17.[2]

The trial court found no merit to Cirillo's claim, explaining as follows:

> Any prejudice caused by the use of the word victim was cured by this court's instructions. In addition to the foregoing instructions given at the time the word was used, the court's closing instructions included instructions regarding the presumption of innocence. [N.T., 2/14/17, at 183-84]. It is well settled that the jury is presumed to have followed the court's instructions. **Commonwealth v. LaCava**, 666 A.2d 221, 228 (Pa. 1995). Therefore, this claim must fail.

Trial Court Opinion, 11/8/17, at 17. We agree.

Although Cirillo cites "mandated SANE protocol" to support his claim, he fails to cite the appropriate standard of review or any other case authority to support his position. **See Commonwealth v. Tielsch**, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal). Nevertheless, we note that "improper commentary on a witness'

---

[2] Cirillo did not object after either instruction. Thus, Cirillo's claims regarding any falsehood or inaccuracy in the instruction is waived. **See** Pa.R.A.P. 302(a).

credibility may be achieved through means other than the prosecutor's own statements, such as eliciting improper comments from a Commonwealth witness." **Commonwealth v. Tedford**, 960 A.2d 1, 32 (Pa. 2008). As with claims of prosecutorial misconduct, we apply the following standard:

> [P]rosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. . . . In reviewing a claim of improper prosecutorial comments, our standard of review is whether the trial court abused its discretion. When considering such a claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one, because not every inappropriate remark . . . constitutes reversible error.

**Commonwealth v. Noel**, 53 A.3d 848, 858 (Pa. Super. 2012) (citations omitted).

Cirillo's bare assertion that Nurse Bell "repeatedly characterized [U.A.] as a "victim" rather than a "patient", which highly prejudiced this jury[,]" does not meet this burden. Cirillo's Brief at 17. Moreover, our review of the record establishes that throughout her entire testimony, Nurse Bell used the term "victim" and "patient" interchangeably. **See** N.T., 2/1017, at 19-43. Finally, as noted by the trial court, it is presumed that the jury follows the trial court's instructions. **LaCava, supra**. Thus, the trial court did not abuse its discretion in denying Cirillo relief based on this issue. **See Commonwealth v. Manley**, 985 A.2d 256, 266 (Pa. Super. 2009) (explaining that a trial court may remove the taint caused by improper testimony by providing curative instructions).

**II.    DID THE [TRIAL] COURT ERR IN PERMITTING [NURSE BELL] TO RENDER AN OPINION IN THE ABSENCE OF ANY EVIDENCE SINCE THE PROSECUTION DID NOT TEST ANY OF THE INITIALLY COLLECTED EVIDENCE AND IN THE ABSENCE OF ANY PHYSICAL FINDINGS WITHIN THE SANE-CONDUCTED EXAM?**

In his second issue, Cirillo concedes that Nurse Bell, in her capacity as an expert, can render an opinion. Cirillo's Brief at 18. He asserts, however, that the opinion "must be based upon the findings of the exam." *Id.* According to Cirillo, Nurse Bell "was unable to conduct a full examination, and made no physical findings within the limited examination that she did conduct." Cirillo's Brief at 20. When coupled with the fact that "there were no state of the art forensic tests done, no evidence examined, and no interviews conducted for corroboration[,]" there was "no basis for [Nurse] Bell's expert opinion and she could not have held it to a reasonable degree of medical certainty." *Id.* at 21-22.[3]

Our review of the record supports the conclusion by both the trial court and the Commonwealth that this issue is waived because Cirillo did not raise any objection to this testimony at trial. *See* Pa.R.A.P. 302(a); ***Commonwealth v. Rodriguez***, 174 A.3d, 1130, 1145 (Pa. Super. 2017) (reiterating that "[t]he absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal) (citations omitted). Additionally,

---

[3] Nurse Bell testified that she was of the opinion, to a reasonable degree of medical certainty, that the results of her limited exam were consistent with the history and account given by A.U. *See* N.T., 2/10/17, at 49.

we note that Cirillo stipulated to Nurse Bell's expertise, N.T., 2/10/17, at 5-8, and that, in a sexual assault prosecution, an expert may testify that the absence of physical trauma is consistent with the allegation of sexual abuse. *Commonwealth v. Minerd*, 753 A.2d 225, 227 (Pa. 2000). Thus, Cirillo's second issue affords him no relief.

### III. DID THE [TRIAL] JUDGE ERR IN FAILING TO RECUSE HIMSELF HAVING PRESIDED OVER [CIRILLO'S] PREVIOUSLY SUBMITTED AND WITHDRAWN GUILTY PLEA?

Cirillo's third issue involves the recusal of the trial judge, the Honorable Steven T. O'Neill. Cirillo asserts that, although he withdrew his prior guilty plea to one count of rape of an unconscious person before Judge O'Neill, and eventually a jury decided his case, Judge O'Neill's "lack of impartiality set the tone for trial, had a chilling effect on [Cirillo's] counsel's efficacy and undoubtedly impacted the jurors." Cirillo's Brief at 28-29.

Because Cirillo "presents no evidence that he sought a recusal at any time before the jury rendered its verdict" this issue is waived. *Commonwealth v. Johnson*, 719 A.2d 778, 790 (Pa. Super. 1998) (*en banc*). Although Cirillo asserts that "[i]t is the obligation of the judge to assess whether or not to hear a matter even if a motion to disqualify has not been filed," and argues that he could not have been expected to file a motion when Judge O'Neill "fails to disclose a potential source of bias," he cites no authority for either proposition. Thus, we do not consider the claim further. *See*

- 11 -

*Commonwealth v. Tielsch*, 934 A.2d at 93 (holding that undeveloped claims will not be considered on appeal).[4]

> **IV. PURSUANT TO RECENTLY DISCOVERED KNOWLEDGE, DID THE JUDGE ERR IN FAILING TO DISCLOSE AND INFORM COUNSEL OF HIS SPOUSE'S CAREER IN RAPE COUNSELING AT THE UNIVERSITY OF PENNSYLVANIA, BOTH OF WHICH WERE EVIDENT IN THE UNDERLYING TONE AND THE RULINGS/CONDUCT WITHIN THE TRIAL AS WELL AS THE POST-TRIAL MOTIONS?**

Cirillo had previously filed with this Court a "Motion For Remand From Appellate Court To Trial Court For Filing Of A Supplemental Post Sentence Motion And Evidentiary Hearing Based On After Discovered Evidence, (Pa.R.Crim.P. 720 (C)." We denied the motion without prejudice to Cirillo's "right to reapply for the requested relief in [his appellate] brief." Order, 3/6/18.

Cirillo asserts that "[t]he issue involves Judge O'Neill's failure to disclose a significant influence in his life and a relevant aspect affecting the trial,

---

[4] Citing *Commonwealth v. Hammer*, 494 A.2d 1054 (Pa. 1985), Cirillo attempts to avoid waiver by arguing that "[t]he impact of counsel's objection becomes negligible and may be viewed by the judge as a source of annoyance thereby aggravating the situation." Cirillo's Brief at 27. *Hammer* did not involve an issue of recusal *per se*, but rather, an instance were the conduct of the trial judge "in conducting extensive and repeated examination of witnesses, including the defendant, acted often times in the roll of advocate for the prosecution . . . and exhibited incredulity of the defendant's testimony[.]" *Hammer*, 494 A.2d at 1056. It is in this context that our Supreme Court made the commented cited by Cirillo. No such evidence of Judge O'Neill's active participation appears in the present record.

specifically the education and career of his wife." Cirillo's Brief at 29. As evidence to support this claim, Cirillo refers not only to Dr. O'Neill working "closely with victims of sexual assault and acquaintance rape," but notes that, in 2012, when receiving her doctorate, she dedicated her dissertation on the topic of acquaintance rape to her husband, Judge O'Neill. *Id.* at 29-30. Cirillo further argues that "[a] review of the record clearly demonstrates a number of rulings which materially prejudiced [him] such as that contained in [issue] I." According to Cirillo, "had he been informed of this spousal relationship, which caused a bias, or prejudice against" him, he would have sought Judge O'Neill's recusal. Cirillo's Brief at 30 (citing **Commonwealth v. Darush**, 459 A.2d 727 (Pa. 1983)).

Cirillo's claim entitles him to no relief. First, contrary to our previous order, he has not requested a remand to file a supplemental post-sentence motion to raise the after-discovered evidence claim before the trial court. **See Commonwealth v. Williams**, 153 A.3d 372, 378 (explaining the Note to Rule 720 states that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge"). Moreover, in making his argument, Cirillo does not reference the applicable test regarding his proffered evidence. Therefore, this claim is also undeveloped. **Tielsch**, **supra**.

It is well-settled that to obtain relief on the basis of after-discovered evidence, a criminal defendant must demonstrate that the new evidence: "(1)

- 13 -

could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." **Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018).

Cirillo has not met this burden. Within his brief, he does not inform us of when he actually learned of this new information. Dr. O'Neill dedicated her dissertation to her husband approximately five years prior to Cirillo's trial. Moreover, Cirillo's support for his claim that Dr. O'Neill is a "significant influence" on Judge O'Neill is based on no more than speculation.[5] There is no indication of record to support Cirillo's claim that the Judge O'Neill's wife had any connection to the criminal proceeding against him. Thus, this issue fails.

> **V.   DID THE COURT ERR IN FAILING TO SUPPRESS THE CELL PHONE SEIZED FROM [CIRILLO'S] POCKET WITHOUT A SEARCH WARRANT AND ALL OF THE EVIDENCE DERIVED THEREFROM AS VIOLATIVE OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE [I] SECTION 8 OF THE PENNSYLVANIA CONSTITUTION?**

---

[5] Although Cirillo refers to the argument provided in his first issue as "evidence" of Dr. O'Neill's influence on the curative instructions given by Judge O'Neill during Nurse Bell's testimony, we have already rejected this claim.

As reiterated above, police seized Cirillo's cell phone after he exited A.U.'s apartment complex. In support of his fifth issue, Cirillo argues:

The aforementioned facts clearly establish that the seizure of the cell phone was unlawful; accordingly, it and all derived evidence are inadmissible and should have been ruled as such. Its seizure was neither pursuant to a warrant nor to voluntary consent. It was not seized on the basis of exigency since the police did not immediately act upon hearing [Cirillo's] intention to delete the photo and further the officers had knowledge that the deleted data was recoverable. The seizure was not subject to the plain view exception since one of the requirements, the incriminating nature of the item as readily apparent, was missing. The seizure was not incident to arrest since the officers did not arrest [Cirillo] at the time of the seizure.

Without a warrant and without applicability to any of the warrantless exceptions, the officers' seizure of the cell phone in violation of the Constitutional rights of [Cirillo]. In ruling that the cell phone and its derivative evidence were admissible, the trial court clearly abused its discretion.

Cirillo's Brief at 37-38.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Simonson*, 148 A.3d 792, 796 (Pa. Super. 2016) (citation omitted). When, as here, a motion to suppress is denied, we apply the following:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much

- 15 -

of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . [When] the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Id.***

"Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Evans***, 153 A.3d 323, 327 (Pa. Super. 2016) (citations omitted). Finally, when considering a motion to suppress evidence, it is within the suppression court's sole province as factfinder to pass on the credibility of the witnesses and the weight to be given to their testimony. ***Simonson***, 148 A.3d at 796 (citation omitted).

Judge O'Neill concluded that the seizure of Cirillo's cell phone was properly based on either one of two exceptions to the warrant requirement:

> It is well-settled that the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution require a lawfully obtained warrant before police can conduct a search or seize property. However, there are some exceptions to the warrant requirement. Two such exceptions are exigent circumstances and plain view.
>
> "Exigent circumstances exist where a police officer has probable cause to believe that immediate action is necessary to preserve evidence of a crime." ***Commonwealth v. Wright***, 99 A.3d 565, 571 (Pa. Super. 2014) (citing ***Commonwealth v. Bostick***, 958 A.2d 543, 557 (Pa. Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009)).
>
> Plain view allows for the warrantless seizure of an item. The United States Supreme Court adopted a three-prong tests for application of the plain view doctrine: (1) the police

- 16 -

must observe the object from a lawful vantage-point; (2) the incriminating character of the object must be immediately apparent; and (3) the police must have a lawful right of access to the object. **Horton v. California**, 496 U.S. 128 (1990); and the [Pennsylvania] Supreme Court adopted this test in **Commonwealth v. McCullum**, 602 A.2d 313, 320 (Pa. 1992) and **Commonwealth v. Graham**, 721 A.2d 1075, 1079 (Pa. 1998).

Exigent circumstances may establish the basis for the "lawful right of access" prong of the plain view doctrine. **See McCullum**, at 320-321; **Commonwealth v. Jones**, 988 A.2d 649 (Pa. 2010).

Instantly, the police observed the cell phone from the lawful vantage point in a public parking lot. The incriminating nature of the cell phone was immediately apparent as law enforcement had just intercepted a conversation between [Cirillo] and [A.U.] wherein he described the photographic evidence on his phone and his intention to delete the evidence.

Therefore, this Court concludes that the moveable and destructible nature of [Cirillo's] cellular telephone created an exigency that allowed law enforcement a lawful right of access to the phone when [Cirillo] left the condominium to prevent [Cirillo] from both destroying the photographic evidence contained therein and from secreting or destroying the phone itself.

**See** Findings of Fact, Conclusions of Law and Order Sur [Cirillo's] Motion to Suppress Evidence, 9/2/16, at 2-3. Thus, Judge O'Neill denied Cirillo's suppression motion in its entirety.

Our review of the record establishes that Judge O'Neill correctly cites the applicable case law and properly denied Cirillo's suppression motion. Although, within his brief, Cirillo cites to general search and seizure principles, **see** Cirillo's Brief at 31-35, he does not cite specific case authority when applying these general principles to the circumstances of his case. For

example, Cirillo cites no case authority to support his claim that, under the exigent circumstances exception, the police were required to act immediately once they heard his intent to destroy the photo. So too, Cirillo fails to cite any authority to support his claim that no exigency actually existed because the police had the ability to nevertheless recover the photo even if he deleted it. Thus, these undeveloped claims are waived. **Tielsch**, **supra**.

Additionally, Cirillo challenges the application of the plain view doctrine because he asserts the incriminating character of his cell phone was not immediately apparent. Once again, he cites no case authority. "A police officer has probable cause to believe that an object is incriminating where the facts available to the officer would warrant a man of reasonable caution in the belief that certain items by be contraband or stolen property or useful as evidence of a crime." **Commonwealth v. Wright**, 99 A.3d 565, 569 (Pa. Super. 2014) (emphasis omitted). This Court in **Wright** concluded that police lacked probable cause to believe that the cell phone seized during the execution of an arrest warrant had any connection to their murder investigation. **Wright**, 99 A.3d at 569-572. Here, the facts are much different. Cirillo's discussion of the photo in the intercepted phone call provided police ample probable cause to believe that the phone had "useful evidence" on it. Thus, Cirillo's fifth issue fails.

> **VI.  DID THE COURT ERR IN FAILING TO SEQUESTER THE JURY SINCE THE CASE WAS SCRUTINIZED BY THREE MAJOR TELEVISION NETWORKS AND BY A MULTIPLE OF [SIC] LOCAL NEWSPAPERS AND THE JUDGE PERMITTED THE JURORS TO**

**MAKE TEXT AND TELEPHONE CALLS DURING THE
TRIAL RECESSES?**

In support of this claim, Cirillo first refers to Pa.R.Crim.P. 642(A), which provides that the "[t]he trial judge may, in the judge's discretion, order sequestration of trial jurors in the interests of justice."[6]  He then cites **Commonwealth v. Sutton**, 400 A.2d 1305 (Pa. 1979) a case where our Supreme Court reversed Sutton's conviction for second-degree murder and related charges because "the trial court failed to sequester the jury in the face of publicity, extensive, sustained, and so pervasive as to conclude that the community was saturated."  Cirillo's Brief at 40.  Cirillo claims that, as in **Sutton**, the jurors in his trial should have been sequestered:

> The facts [sic] that [Cirillo] bears the name of his father, who was a Judge on the Superior Court of Pennsylvania as well as the Court of Common Pleas of Montgomery County, and that [Cirillo] as a lawyer, guaranteed the media coverage would be extensive, constant and prejudicial.

**Id.**  Although he acknowledges that Judge O'Neill provided cautionary instructions to the jury prior to trial recesses, Cirillo argues that these instructions "gave permission to the jurors to use the cell phones for texts and calls, further compromising the integrity of the trial."  **Id.** at 41.

Cirillo's sixth issue is waived as it is being raised inappropriately for the first time on appeal.  **See generally**, Pa.R.A.P. 302. Moreover, a critical

_____

[6] Cirillo actually refers to this rule by its prior designation as Pa.R.Crim.P. 1111(a).  **See** Cirillo's Brief at 39.

distinction from **Sutton** is the fact that Cirillo's counsel never moved for sequestration. **See Sutton**, 400 A.2d at 1306 (noting that defense counsel moved for the sequestration of the jury at the beginning of the jury selection process). Thus, as Cirillo failed to raise this issue at trial, we will not consider it further.

> VII. DID THE COURT ERR BY PRECLUDING [CIRILLO'S] COUNSEL THE OPPORTUNITY TO CONDUCT A FULL CROSS EXAMINATION, THEREBY VIOLATING [CIRILLO'S] PROCEDURAL/DUE PROCESS RIGHTS AFFORDED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE [U.S] CONSTITUTION AND SECTION [ARTICLE I,] SECTION 8 OF THE PENNSYLVANIA CONSTITUTION, MOST EVIDENTLY IN, BUT NOT LIMITED TO, JUDGE STEVEN T. O'NEILL'S MISAPPLICATION OF THE RAPE SHIELD LAW AND MULTIPLE ERRORS IN RULINGS AS TO OTHER EVIDENTIARY MATTERS?

In his seventh issue, Cirillo actually challenges three specific evidentiary rulings made by Judge O'Neill during his trial. Thus, despite the phrasing of the issue above, we will consider only these three rulings. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super 2007) (stating "[t]his court will not act as counsel and will not develop arguments on behalf of an appellant").

As our Supreme Court has summarized:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest

unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. *See* Pa.R.E. 401; Pa.R.E. 402[.]

*Commonwealth v. Dillon*, 925 A.2d 131, 136-37 (Pa. 2007). "It is well settled that the admissibility of evidence is a matter addressed to the sound discretion of the trial court and may be reversed only upon a showing that the court abused that discretion." *Commonwealth v. Wynn*, 850 A.2d 730, 733 (Pa. Super. 2004) (citations omitted); *see also Commonwealth v. Pukowsky*, 147 A.3d 1229 (Pa. Super. 2016); *Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013). "Evidence is admissible if it is relevant—that is, if it makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact." *Wynn*, 850 A.2d at 733.

### 1. Rape Shield

Cirillo first claims that Judge O'Neill abused his discretion by not permitting him to cross-examine Nurse Bell's indication on her examination form that A.U. had acknowledged she had engaged in "consensual vaginal sex within five days of the alleged assault." Cirillo's Brief at 46. According to Cirillo, this inquiry fell outside the parameters of the Rape Shield Law, 18 Pa.C.S.A. section 3104, and was relevant not only to the "conduct/findings of medical examinations performed on [A.U.]," but also relevant to Cirillo's

theory that A.U. "had fabricated the incident at the insistence of her then boyfriend." *Id.*

The Rape Shield Law is as follows:

### § 3104.  Evidence of victim's sexual conduct

**(a)** **General rule.—**Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b)** **Evidentiary proceedings.—**A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial.  If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104.

Judge O'Neill found this sub-issue waived due to Cirillo's failure to object after being precluded from cross-examining Nurse Bell as to this evidence. We agree.  *See Commonwealth v. McGriff*, 160 A.3d 863, 868 (Pa. Super. 2017) (finding issue waived for failure to make a timely and specific objection at time of witness' testimony).  Additionally, we find this issue also waived because Cirillo failed to follow the procedure outlined in section 3104(b). *See*

*Commonwealth v. Burns*, 988 A.2d 684, 690 (Pa. Super. 2009) (explaining that "a defendant who desires to introduce evidence of the victim's prior sexual conduct **must file a written motion** and a make a specific offer of proof prior to trial"); *Commonwealth v. Beltz*, 829 A.2d 680, 684 (Pa. Super. 2003) (rejecting Beltz's argument that he was not required to make a written proffer).

Cirillo contends that "[t]he intended inquiry by [his] counsel to [Nurse] Bell did not fall within the parameters of the Rape Shield Law and did not require written notice." Cirillo's Brief at 47. We disagree. Because Cirillo's "intended inquiry" referred to A.U.'s past sexual conduct, it was properly excluded under the Rape Shield Law. **Compare Commonwealth v. Woeber**, 174 A.3d 1096, 1103 (Pa. Super. 2017)(explaining that the Rape Shield law is inapplicable to evidence of a victim's prior sexual assault; "the evidence is evaluated under the general evidentiary rules").[7] Finally, even applying general evidentiary rules, Cirillo does not explain how this hearsay statement would have been otherwise admissible. **See generally**, **Commonwealth v. Savage**, 157 A.3d 519 (Pa. Super. 2017). Thus, for all these reasons, this portion of Cirillo's seventh issue entitles him to no relief.

_____

[7] Cirillo also asserts that "to negate [his] constitutional rights of confrontation and cross-examination on the failure of counsel to submit a written notice to the [trial court] in this matter, when an extensive sidebar was conducted with the jury absent, is not a sufficient rationale to deprive [him] of his Constitutional rights and ultimately his freedom." Cirillo's Brief at 48. Cirillo cites no authority for this proposition.

**2. Hearsay**

In this portion of his seventh issue, Cirillo asserts that "[n]umerous examples of Judge O'Neill using the 'hearsay' objection erroneously and thereby limiting cross-examination of Commonwealth witnesses."  Cirillo's Brief at 48.    He then cites one example and compares it to Judge O'Neill's treatment of his counsel's objection to a Commonwealth witness' testimony based upon hearsay.  The trial court found this sub-issue waived because it was vaguely stated in Cirillo's Rule 1925(b) statement.  **See** Trial Court Opinion, at 15 n.11 (stating that, "No specific allegation of error has been identified; therefore, this court is unable to provide meaningful analysis").  We agree.  **See Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (reiterating that "if a concise statement is vague, the court may find waiver).

In addition, we find this sub-issue is also waived because it is undeveloped.  Cirillo fails to cite any case authority regarding the general inadmissibility of hearsay or the exceptions thereto as to either instance.  Thus, we find this portion of Cirillo's issue waived and we will not consider it further. **See Tielsch**, **supra.**

**3. Relevance**

In this sub-issue, Cirillo claims that the trial court erred in sustaining the Commonwealth's objection, based on relevance, to his counsel's attempt to ask Mr. Buckwalter about his current relationship with A.U.  He then challenges the same objection that was sustained when he attempted to ask

A.U. whether Buckwalter "was jealous of her at times." Cirillo's Brief at 52. As a third example, Cirillo cites an instance where the Commonwealth's objection was sustained to defense counsel's question that asked A.U.'s father whether she suffered from any other "ailments." *Id.* at 54.

Although Cirillo asserts that this information was relevant to testing the credibility of A.U. and Buckwalter, he fails to develop this argument by citing any authority. Thus, this sub-issue is waived, and we will not consider it further. *See Tielsch*, *supra*.[8]

> **VIII. DID THE COURT ERR IN ITS VIOLATION OF PA RULE [OF EVIDENCE] 403 BY FAILING TO EXCLUDE EVIDENCE . . . ALL OF WHICH PREJUDICIALLY OUTWEIGHED ANY PROBATIVE VALUE?**

Cirillo's eighth issue challenges two instances when the trial court permitted the Commonwealth to introduce demonstrative evidence. "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Reid*, 99 A.3d 470, 493 (Pa. 2014). An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly

---

[8] To the extent Cirillo argues these instances establish Judge O'Neill's partiality and/or prejudice we find the claim waived for failing to raise a recusal motion. *See supra*.

unreasonable, or the result of partiality, prejudice, bias or ill-will. ***Commonwealth v. Davido***, 106 A.3d 611, 645 (Pa. 2014).

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Even evidence that merely advances a material act may be relevant and admissible. ***Commonwealth v. Johnson***, 160 A.3d 127 (Pa. 2017): Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

One such exception is provided by Pennsylvania Rule of Evidence 403, which provides: "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." ***See id.***, Comment. We will address each instance separately.

**1. Sixteen photographs depicting [A.U.] in states of undress, some of which were cumulative[.]**

When the Commonwealth proffers photographic evidence of an alleged victim of crime, the trial court must engage in a two-part analysis in order to determine whether such evidence is admissible. First, a trial court must determine whether the photograph is inflammatory. If not, it may be admitted

if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether the photograph is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

**Commonwealth v. Murray**, 83 A.3d 137, 157 (Pa. 2013)(citations omitted).

Here, after examining the photographs, the trial court concluded that the probative value of the photographs greatly outweighed the risk of prejudice to Cirillo. As Judge O'Neill explained in detail:

> Instantly, there were ten photos of A.U. admitted during trial. [Cirillo] was charged with both Rape and IDSI of an Unconscious Victim. Both charges required proof that the victim was unconscious and [proof] of penetration. The first set of 4 photographs were taken by A.U.'s boyfriend. He took several photos to document the state in which he found her. They were highly probative of her level of intoxication on the evening of the assault, as she is clearly unconscious in the photos and has become ill. Therefore, the court did not err in admitting these photographs. The remaining pictures *were taken by [Cirillo]* during the assault and depict [A.U.'s] state in a series of six pictures taken over a twenty-five-minute time span which culminates in a picture of his [semen] on her inner thigh and around her vagina. Along with these photos, six EXIF files containing the metadata related to each photograph were recovered from [Cirillo's] phone. [When a digital photograph is taken on a cell phone, the phone produces metadata, *i.e.*, a file that contains, *inter alia*, information about the time, date and location in which the photo was taken.] These photos were highly probative of [A.U.'s] state of unconsciousness and of the acts committed by [Cirillo].
>
> A.U. is clearly unconscious in the photographs. In each of the photographs her head is in the same position, indicating that she has not moved. In the first two photographs she is on her back with her legs open. [Cirillo] testified that he could have moved her legs to take this

photo and that "it's possible" he also moved her underwear to expose her vagina.

The photos were also relevant to the issue of penetration. [Cirillo] maintained that he did not have vaginal intercourse with A.U., despite what he told her during the recorded conversation. He testified that while she was sleeping he leaned over and pleasured himself on her left thigh. However, in the photograph, his semen is visible both on her thigh and around her vagina and on her G-string. Therefore, the probative value of the photographs outweighed any prejudice to [Cirillo].

Likewise, admission of the EXIF data and publication of the data with a thumbnail image of the corresponding picture was relevant to show the time period of the assault and to confirm that there were, in fact, six pictures taken by [Cirillo] between 10:25 p.m. and 10:50 p.m. Additionally, the metadata showed that there were [time] gaps between the pictures. Specifically, the first two photos were taken in rapid succession. The third and fourth photos, approximately one minute later. The fifth photo was taken nineteen minutes after the first photo. The final photo was taken six minutes after the fifth photo. The EXIF data also confirmed that all six photos were taken at [A.U.'s] condo.

While explicit, the photos were not inflammatory; however, in an abundance of caution, when the photos were admitted, the court gave a cautionary instruction. Furthermore, the court took additional steps to mitigate any effect on the jury. The EXIF data was displayed by projector and contained only a small thumbnail version of the actual photo. The court only permitted the stand alone photos to be published to the jury as 8 x 10 photographs that were passed around, and then immediately collected, as opposed to allowing the photos to be projected on a large screen contrary to [Cirillo's] assertion. Because the probative value of these photographs outweighed their prejudicial effect, this court did not abuse its discretion in admitting them. Furthermore, this court's cautionary instructions were sufficient to cure any prejudice, as jurors are presumed to follow the court's instructions.

Trial Court Opinion, 11/8/17, at 21-24 (emphasis in original; citations and footnotes omitted).

Our review of the record and applicable law supports Judge O'Neill's conclusions. Initially, we note Cirillo's claim involves sixteen photos because he includes the four photos taken by A.U.'s boyfriend, the six he took, and the six thumbnail photos accompanying the metadata recovered from his cell phone. Judge O'Neill explained, however, how and why this EXIF data was relevant. Thus, Cirillo's claim that six thumbnail photos were cumulative fails.[9]

Moreover, we find no merit to Cirillo's claim that "[p]hotographs cannot establish levels of intoxication; blood tests and medical records can, and they were never taken." Cirillo's Brief at 59. He cites no case authority for this proposition, and it is therefore undeveloped. *See supra*. The same holds true for his claim that the photo exhibiting his semen on A.U. only "proves" he ejaculated, not penetrated. There was no evidence of vaginal penetration that could be drawn from the photograph." As noted above, to be admissible, a photo does not need to "prove" anything; rather it only needs to be relevant, *i.e.*, "it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Johnson*, *supra*.

_____

[9] Cirillo's related claim that "the subject matter of the Buckwalter photographs was fully covered by [his] photographs which had already been admitted into evidence is without merit. Cirillo's Brief at 59. Judge O'Neill explained why each set of photos had distinct reason for being relevant and therefore admissible.

Finally, Cirillo claims that "Judge O'Neill's [cautionary] instructions served to emphasize/reinforce the emotive aspects of the photos to the jury" because he "repeatedly characterized the images as **disturbing and offensive**." Cirillo's Brief at 58-59 (emphasis in original). Our review of the cautionary instructions given by Judge O'Neill refute this claim. Additionally, although Cirillo claims that Judge O'Neill "omitted the 'cautionary' part of his address," *id.* at 60, we conclude Cirillo cannot establish prejudice by the absence of certain language. As noted above, a jury is presumed to follow the trial court's instructions. *LaCava*, *supra*. Thus, this portion of Cirillo's eighth issue fails.

**2. An oversized chart of female anatomy exhibited during the testimony of [Nurse] Bell for the purpose of clarifying the full examination process, which she had not performed on [A.U.].**

In this sub-issue, Cirillo "challenges the admission of the large demonstrative exhibit, a replication/depiction of female genitalia in the open position during the testimony of [Nurse] Bell." Cirillo's Brief at 61. He argues, "[s]uch an exhibit would have been probative had [Nurse] Bell conducted a full examination of [A.U.]," but A.U. was never examined by her. Cirillo's Brief at 61-62. According to Cirillo, Nurse Bell "conducted, at best, a limited physical examination that did not require the presentation of the exhibit. The exhibit was not only unwarranted, but had a prejudicial impact on the jurors, thereby precluding a fair trial." Cirillo's Brief at 62.

Judge O'Neill found Cirillo's claim wholly without merit:

The court notes that [Cirillo] also absurdly alleges that a 4 foot x 8 foot "replication of a vagina" appeared during the entirety of the expert's testimony. In reality, a poster sized textbook diagram of the female anatomy was used briefly on an easel as a demonstrative exhibit during Nurse Bell's testimony. At the beginning of this portion of testimony, the diagram was placed in view of the jury and at the conclusion of her testimony regarding penetration, the Assistant District Attorney stated: "Thank you, Nurse. If you want to step back up, I'll take this down. Detective Sergeant if you want to remove that." The prosecutor was referring to said diagram, and it was removed from view of the jury following the testimony for which it was used.

Trial Court Opinion, 11/8/17, at 24 (citations omitted).

Our review of the record supports Judge O'Neill's conclusions regarding this item of demonstrative evidence. As with other issues, Cirillo's argument to the contrary is undeveloped as it is devoid of case authority, and makes only a bare assertion of prejudice. **Tielsch**, **supra**. In addition, as Judge O'Neill explained with regard to the admission of the photos, the issue of "penetration" applied to both the rape and IDSI charges Cirillo was facing. **See supra** at 27. Thus, this sub-issue of Cirillo's eighth issue fails.

> **IX. DID THE [TRIAL] COURT ERR IN FAILING TO REQUIRE THE TRANSCRIPTION OF ESSENTIAL SIDEBARS, THEREBY PRECLUDING MEANINGFUL APPELLATE REVIEW AND SCRUTINY OF EVIDENTIARY HEARINGS?**

This issue requires little comment, as Cirillo concedes that it was his responsibility, rather than that of the trial court, to request that the sidebars be transcribed. **See** Cirillo's Brief at 62 (citing **Dilliplaine v. Lehigh Valley Trust Company**, 322 A.2d 114, 116-17 (Pa. 1974)). Because Cirillo's counsel

never requested transcription of any side bar, our review of the record supports Judge O'Neill's conclusion that this issue is waived. **See** Trial Court Opinion, 11/8/17, at 15. Cirillo cites **Commonwealth v. Sanchez**, 82 A.3d 943, 967-68 (Pa. 2013), for the proposition that "it is incumbent upon [an appellant] to specify . . . potentially meritorious claims that could not be adequately developed or reviewed" because off-the-record sidebars were not transcribed. Cirillo's Brief at 63. Although Cirillo then mentions several specific instances where this allegedly occurred in his trial, in **Sanchez**, our Supreme Court found waiver because it "reviewed the entire trial record and it is clear that counsel never objected at trial to any off-the-record conferences or side-bar discussions." **Sanchez**, 83 A.3d at 268. The same is true in this case; therefore; Cirillo's ninth claim entitles him to no relief.

**X. DID THE [TRIAL] COURT, [BY] OVERULING [CIRILLO'S] COUNSEL'S OBJECTIONS, ERR IN PERMITTING THE PROSECUTOR TO CONDUCT AN IMPROPER CROSS-EXAMINATION OF [CIRILLO] CONSISTING OF MISSTATEMENTS OF [CIRILLO'S] RESPONSES AND OF REPETITION OF THE SAME QUESTIONS, WHICH MISLED/CONFUSED THE JURORS AND [DENIED CIRILLO] DUE PROCESS?**

In his tenth issue, Cirillo asserts that, because his testimony "was crucial to the jury's decision-making duties . . . the bullying nature and extent of this improper cross-examination by the prosecutor, and the Judge's failure to prevent the same, prejudiced and injured [him] to the extent that he was denied Due Process[.]" Cirillo's Brief at 66 (citing **Phelin v. Kenderdine**, 20 Pa. 354 (1853)). We disagree.

Judge O'Neill found this issue waived because Cirillo's counsel failed to object or, when he did so, "no specific grounds or constitutional basis was given." Trial Court Opinion, 11/8/17 at 15 n.10. Our review of the record supports this conclusion. **See generally**, Pa.R.A.P. 302(a). Notwithstanding waiver, we still find no merit to Cirillo's claim.

As this Court has recently summarized:

> Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness' motive for testifying. A trial court has discretion to determine both the scope and permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of discretion, or an error of law.

**Commonwealth v. Woeber**, 174 A.3d 1096, 1103 (Pa. Super. 2017) (citations omitted). While exchanges between Cirillo and the Commonwealth became contentious at times, after reviewing the record, we cannot conclude that Judge O'Neill abused his discretion when directing the extent of the Commonwealth's cross-examination of Cirillo.

**XI. DID THE [TRIAL] COURT ERR BY FAILING TO RULE CONSISTENTLY AND EQUALLY DURING THE COURSE OF THE TRIAL, SPECIFICALLY PERMITTING THE PROSECUTOR EXCESSIVE LATITUDE IN CROSS-EXAMINATION WHILE UNDERMINING THAT OF [CIRILLO'S] COUNSEL, THEREBY VIOLATING [CIRILLO'S] DUE PROCESS RIGHTS?**

In his eleventh issue, Cirillo asserts that "[i]n addition to the underlying bias set forth previously in this appeal, the unequal application of the law by

Judge O'Neill can be illustrated in the latitude given to the prosecution [as referenced in the previous issue . . . when compared to the] evidentiary rulings and conduct [that] occurred when the Commonwealth's key witnesses were subjected to cross-examination." Cirillo's Brief at 75-76. He then cites in detail several instances when he believes Judge O'Neill erred in limiting his counsel's cross-examination of Commonwealth witnesses. *See id.* at 76-83. According to Cirillo, '[t]he aforementioned rulings by Judge O'Neill were not erroneous, but [they] had a chilling effect upon [his] defense and deprived him of his Sixth Amendment rights. The exclusion of such testimony denied the defense the opportunity to [cast] doubt as to the credibility of both Buckwalter and [A.U.] and to their rendition of the events at issue, and adversely impacted the verdict." *Id.* at 84-85.

As with several other issues raised by Cirillo, Judge O'Neill found Cirillo's eleventh issue waived because he failed to lodge a specific objection at trial. Trial Court Opinion, 11/8/17, at 15. We agree. Absent waiver, however, we would still conclude that Cirillo's eleventh issue does not entitle him to relief. We have already rejected his attempts to establish Judge O'Neill's bias in his rulings. Moreover, to the extent Cirillo rehashes his claims from prior issues that we have already determined to be waived or meritless, he is entitled to no relief. *See Commonwealth v. Miller*, 664 A.2d 130, 1321 (Pa. 1995) (explaining that adverse rulings by the trial court, without more, do not demonstrate bias). Finally, as noted above, Cirillo is entitled to a fair trial, not a perfect one. *Commonwealth v. Bond*, 190 A.3d 664, 671 (Pa. Super

2017) (citation omitted) (noting the concept of harmless error "is premised on the well-settled proposition that [a] defendant is entitled to a fair trial but not a perfect one"). Thus, Cirillo's eleventh issue affords him no relief.

**XII. DID THE [TRIAL] COURT ERR IN ALLOWING PROSECUTORIAL MISCONDUCT THEREBY DEPRIVING [CIRILLO] OF A FAIR TRIAL[?]**

In his twelfth issue, Cirillo raises four instances of alleged prosecutorial misconduct. Judge O'Neill found each claim waived for lack of a specific objection. **See** Trial Court Opinion, 11/8/17, at 15. Our review of the record supports this conclusion. Nevertheless, we will address each instance briefly.

**1. The Commonwealth's omission in discovery to provide page 4 of the 8/4 medical discharge summary of [A.U.], the contents of which may have contained her statements as to why she presented herself at the Emergency Room accompanied by Paul Buckwalter and any possible coercion by him in doing so.**

This sub-issue raises a **Brady** violation. **See generally Brady v. Maryland**, 373 U.S. 83 (1983). Our review of the record supports Judge O'Neill's conclusion that Cirillo did not, at any time before or after trial, raise an objection on this basis. Thus, the claim is inappropriately being raised for the first time on appeal. Pa.R.A.P. 302(a). Cirillo does not cite to the record in order to dispute the waiver finding. Indeed, Cirillo's claim is also waived as undeveloped, as it is devoid of pertinent case authority. **Tielsch, supra.**

**2. The Commonwealth's failure to test clothing and other items seized from [A.U.'s] apartment, to test [A.U.] for drugs, and to conduct a DNA test on the**

**swab taken by [Nurse] Bell during her examination of [A.U.]**

In this sub-issue, Cirillo asserts that "since [A.U.] had no recollection of the events that had transpired, physical evidence was crucial to [his] case to support his defense." Cirillo's Brief at 88. According to Cirillo, "[c]onsidered collectively, the three omissions are indicative of bad faith and as such, [his] claim of bad faith is valid." *Id.* at 89. Cirillo inappropriately raises this claim for the first time in his Rule 1925(b) statement. Thus, it is waived. This claim is inappropriately being raised by Cirillo, for the first time on appeal. *See Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa. Super. 2003) (citation omitted) (explaining "a party cannot rectify the failure to preserve an issue by proffering it in response to a Pa.R.A.P. 1925(b) order.") Moreover, because Cirillo provides no case authority to support his assertion of bad faith, we will not consider it further. *See Tielsch*, *supra*.

**3. Law enforcement's false representation to Magisterial District Judge Hunsicker in requesting her services as to [Cirillo's] arrest/bail due to the unavailability of Magisterial District Judge Casillo, and the resultant "justice shopping" that occurred.**

This sub-issue is doubly waived. Initially, as found by Judge O'Neill, nowhere in the record—and Cirillo cites none—did Cirillo raise this issue either before or during trial. In addition, Cirillo does not develop how any prejudice occurred, since a jury found the evidence to support his convictions beyond a reasonable doubt. *See Commonwealth v. Ricker*, 120 A.3d 349, 353 (Pa.

Super. 2015) (reiterating that that errors at the preliminary hearing state are harmless whenever the defendant is found guilty at trial).

**4. The Commonwealth's engineering [A.U.'s] charge of Identity Theft, a "crimen falsi" offense, to a plea to harassment just prior to the trial, thereby precluding the jury the opportunity to assess her credibility in light of such information.**

This final sub-issue amounts to no more than speculation by Cirillo, and is wholly undeveloped. ***See Tielsch***, ***supra***. Additionally, Cirillo fails to cite to any place in the trial record where he preserved this claim. Thus, it is also waived on this basis and we will not consider it further.

**XIII. DID THE [TRIAL] COURT ERR IN ITS MISAPPLICATION OF THE HEARSAY RULE, THEREBY IMPROPERLY DENYING [CIRILLO'S] COUNSEL A FULL CROSS EXAMINATION OF THE WITNESSES TESTIFYING AGAINST [HIM] AND AS SUCH, WITHHOLDING INFORMATION CRITICAL TO THE JURY'S ASSESSMENT OF THE CREDIBILITY, MOTIVE AND BIAS OF THE WITNESSES?**

In his thirteenth issue, Cirillo revisits Judge O'Neill's application of the hearsay rule. This time, Cirillo argues that when his counsel asked A.U. a question regarding her relationship with Buckwalter, the Commonwealth objected on relevancy grounds, but "the [c]ourt, however, on its own initiative, changed the objection to "hearsay." Cirillo's Brief at 96. He then, at length, cites the pertinent exchange, and asserts that Judge O'Neil's sustaining of the objection was in error. According to Cirillo, he was once again "denied an opportunity to conduct an effective cross-examination of

Commonwealth witnesses because the [trial court] continually sustained [the] Commonwealth's "hearsay" objections in error. The information requested did not support the truth of the matter asserted, rather it was offered for the collateral purpose of testing bias and credibility." *Id.* at 101.

Once again, we review a trial court's evidentiary rulings for abuse of discretion and again note the trial court's rule in directing the scope and extent of cross-examination. *Woeber*, *supra*.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). Hearsay "is generally inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the [Pennsylvania] Rules of Evidence." *Savage*, 157 A.3d at 524.

In his opinion, Judge O'Neill found this issue waived because it was vaguely stated by Cirillo in his Rule 1925(b) statement: "No specific allegations of error have been identified; therefore, this court is unable to provide a meaningful analysis." Trial Court Opinion, 11/8/17, at 15 n.11. As this conclusion is supported by our review of Cirillo's Rule 1925(b) statement, we find this issue waived. *See Commonwealth v. Allhouse*, 969 A.2d 1236, 1239 (Pa. Super. 2009) (citation omitted) (explaining "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for appellate review").

Absent waiver, Cirillo's thirteenth issue would not entitle him to relief. Although in this issue Cirillo claims that Judge O'Neill "continually" erred in sustaining hearsay objections by the Commonwealth, we limit our

review to the one instance referenced in this issue. Cirillo's Brief at 96-98. We further note that, while Cirillo cites certain general principles regarding the hearsay rule and its exceptions, he does not specifically develop why the trial court erred in the instance he specifies. Although he asserts that the "answer to the question being asked, was not being used for 'the matter asserted" and states that "[h]earsay questions are not answers and therefore cannot be used to prove facts," *id.* at 100-01, he cites no case authority. Thus, this claim is also waived as undeveloped. *See Tielsch*, *supra*.

**XIV. DID THE [TRIAL] COURT ERR BY CONCLUDING THAT THE WEIGHT OF THE EVIDENCE WAS SUFFICIENT TO SUPPORT A CONVICTION OF EACH OF THE CHARGES TO THE STANDARD OF BEYOND A REASONABLE DOUBT?**

In support of his fourteenth issue, Cirillo asserts that "the jury's verdict was not based upon the complaining witness; [A.U.] had no recollection of what happened. Rather it was derived from a trial in which the trial judge abused [his] discretion by allowing his bias to permeate his rulings, thereby invading the exclusive domain of the jury." Cirillo's Brief at 104. Cirillo then refers back to his prior arguments to demonstrate that "Judge O'Neill's personal bias and failure to recuse himself, his ruling as to the admission of evidence (explicit and cumulative photos of [A.U.] in a state of undress, the seized cell phone in violation of the 4[th] amendment) and his overall support of the Commonwealth, to the detriment of [Cirillo], usurped the role of the jury."

Cirillo's Brief at 105.  According to Cirillo, "Judge O'Neill distorted the weight of the evidence and abused his discretion throughout the trial, ultimately tainting the verdict."  *Id.*  We disagree.

A trial court reviewing a weight of the evidence claim should only grant a new trial "where the verdict is so contrary to the evidence as to shock one's sense of justice."  *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citation omitted).  When reviewing a challenge to the weight of the evidence, our standard of review differs from the trial court:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support.  ***Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.***
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. ***Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.***

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added).  Absent an abuse of discretion, the trial court's

decision will not be disturbed. *See Commonwealth v. Griffin*, 515 A.2d 865, 869 (Pa. 1986). An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." *Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007) (citation omitted). By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." *Id.*

Judge O'Neill found no merit to Cirillo's weight claim:

> [Cirillo] took the stand in his own defense and over the course of a day and a half gave a meandering, convoluted account of a purported relationship with A.U. Clearly, the jury disbelieved his testimony and afforded greater weight to the testimony of the Commonwealth's witnesses. The court discerns no error in the jury's verdict and thus did not abuse its discretion in denying [Cirillo's] post sentence motion for a new trial on this basis.

Trial Court Opinion, 11/8/17, at 25 (citations omitted).

Our review of the record supports Judge O'Neill's conclusion. A trial court's denial of a motion for new trial based on a weight of the evidence claim "is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). In fact, Cirillo does not argue a true weight claim, as he has not even attempted to show "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Clay*, *supra*. Rather, he claims trial court bias and rehashes previous issues that we have already rejected. Thus, Cirillo's fourteenth claim entitles him to no relief.

### XV. DID THE [TRIAL] COURT ERR BY CONCLUDING THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE ELEMENTS OF EACH OF THE CRIMINAL CHARGES OF WHICH [CIRILLO] WAS CONVICTED?

In his fifteenth issue, Cirilo claims that the Commonwealth did not meet its burden of establishing his guilt of the crimes with which he was charged because:

Essential elements to the proof of the rape offenses are intercourse and the unconscious state of the complainant, essential to the sexual assault is the lack of complainant's consent, none of which had been established by the evidence or the testimonies presented by the Commonwealth. There was no uncorroborated testimony by [A.U.] of a sexual offense; there was, however, evidence that [A.U.] and [Cirillo] shared a professional and a social relationship and that she had invited [him] to her apartment on the night in question, showered for an extensive period, and ensured that there was liquor available. There were no physical indicia of sexual intercourse/penetration; no physical evidence gleaned from the examination [by Nurse Bell] whose report was a mere compilation of [A.U.'s] statement of no recollection, a non-descript Emergency Room exam except for a statement from [A.U.] that there had been no rape, and a police summary initiated by [A.U.'s] boyfriend. The Commonwealth collected, but never tested the victim's clothing or a DNA swab. Without proof beyond a reasonable doubt of the aforementioned elements of intercourse, [A.U.'s] unconscious state, and the lack of consent, [Cirillo's] convictions cannot stand.

Cirillo's Brief at 107-08.

In reviewing a sufficiency claim, we must consider "'whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's finding of all the elements of the offense beyond a reasonable doubt.'"

***Commonwealth v. Cash***, 137 A.3d 1262, 1269 (Pa. 2016) (*quoting*
***Commonwealth v. Smith***, 985 A.2d 886, 894-95)).   Only "where the
evidence offered to support the verdict is in contradiction to the physical facts,
in contravention to human experience and the laws of nature, then the
evidence is insufficient as a matter of law."  ***Widmer***, 744 A.2d at 751.

Judge O'Neill found this issue waived because in his Rule 1925(b)
statement, in raising his sufficiency claim, Cirillo made only a general
reference to the "corpus delecti."  Trial Court Opinion, 11/8/17, at 16 n.12.
We agree.  ***See Commonwealth v. Tyack***, 128 A.3d 254, 260 (stating "[i]f
[an appellant] wants to preserve a claim that the evidence was insufficient,
then the [Rule] 1925(b) statement needs to specify the elements or elements
upon which the evidence was insufficient")(citations omitted).   In addition, we
find this claim waived also because, although within his brief Cirillo references
certain elements of the crimes for which he was convicted, his argument is
devoid of case authority and therefore undeveloped.  ***See Tielsch***, ***supra.***
Thus, Cirillo's fifteenth issue fails.

### XVI.  DID THE [TRIAL] COURT ERR AND ABUSE ITS DISCRETION BY IMPOSING AN EXCESSIVE AND UNDULY HARSH SENTENCE?

In his sixteenth and final issue, Cirillo challenges the discretionary
aspects of his sentence. There is no absolute right to an appeal when
challenging the discretionary aspects of a sentence.  Cirillo, therefore, must
satisfy a four-part test to invoke this Court's jurisdiction.   ***See***

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013). Cirillo has preserved the sentencing challenge for appellate review by raising it at sentencing or in a timely post-sentence motion. Thus, he must (1) "include in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[,]" pursuant to Pa.R.A.P. 2119(f), and (2) "show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *Commonwealth v. Hill*, 66 A.3d 359, 363-64 (Pa. Super. 2013).

Cirillo has failed to include a Rule 2119(f) statement in his brief, and the Commonwealth has objected to this procedural misstep. In these circumstances, Cirillo's sentencing claim is waived. *Commonwealth v. Griffin*, 149 A.3d 349, 353 (Pa. Super. 2016).

Absent waiver, Cirillo's sentencing claim warrants no relief.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shull*, 148 A.3d 820, 831 (Pa. Super. 2016) (citation omitted).

Cirillo claims that the aggregate sentence Judge O'Neill imposed, "although within the upper range of the standard sentencing guidelines, is

excessive in nature when imposed consecutively and inflicts a severe punishment upon [him]. Cirillo's Brief at 113. Relying on his previous arguments, Cirillo, further asserts that "the record is replete with evidence of Judge O'Neill's bias, both in trial as well as at sentencing. Minimally, he exhibited more than a hint of animosity toward [Cirillo] and a predisposition of partiality." Cirillo's Brief at 116.

Our review of both the trial and sentencing transcripts refutes Cirillo's sentencing claims. Our standard of review limits our ability to vacate and remand where the court sentenced within the guidelines. We may reverse only if application of the guidelines would be clearly unreasonable under the circumstances. 42 Pa.C.S.A. § 9781(c)(2); *see also Commonwealth v. Macias*, 968 A.2d 773, 777 (Pa. Super. 2009) (explaining that the term "unreasonable" is not defined in the Sentencing Code but generally means a decision that is either irrational or not guided by sound judgment).

Here, Judge O'Neill recognized that he imposed a standard range sentence, that he "carefully considered the sentencing guidelines as well as the aggravating and mitigating factors." Trial Court Opinion, 11/8/17, at 28. Judge O'Neill then cites in detail the reasons he gave for his sentencing choice, and also explained why he chose to impose the sentences consecutively. *See id.* at 29-29. The fact that Cirillo disagrees with the weight Judge O'Neill gave to one or more sentencing factors does not entitle him to relief. *See Commonwealth v. Griffin*, 804 A.2d 1, 9 (Pa. Super. 2002) (citing *Commonwealth v. Williams*, 562 A.2d 1385, 1388 (Pa. Super. 1989) (*en*

*banc*) (explaining that an allegation that the sentencing court did not adequately consider various factors is, in effect, inappropriately asking that this Court substitute its judgment for that of the trial court in fashioning a defendant's sentence). Thus, Cirillo's final claim entitles him to no relief.

In sum, as none of the sixteen issues raised by Cirillo entitles him to relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/19